141 So. 55

**CALCASIEU OIL CO., Inc., v. YOUNT–LEE OIL CO. et al.**

No. 31391.

Feb. 29, 1932.

Rehearing Denied March 30, 1932.

Moss & Siess and E. R. Kaufman, all of Lake Charles, for appellants Calcasieu Development Co., F. Lisle Peters, and Louisiana Royalty Co.

McCoy, Moss & King, of Lake Charles, for appellees Simeon Doiron and others.

ROGERS, J.

The Calcasieu Oil Company, Inc., as the operator of a certain mineral lease, deposited in court the funds accruing from the royalties thereunder, and impleaded various claimants thereto, in order that their rights therein might be judicially determined. The court below rejected the claims of the 'Calcasieu Development Company, Inc., and its assigns, F. Lisle Peters and Louisiana Royalty Company, Inc., and these claimants have appealed from the judgment.

Valery Doiron, Simeon Doiron, and Mrs. Josephine O'Quinn, by written contract dated November 18, 1926, appointed the Calcasieu Development Company, Inc., their agent and attorney in fact to negotiate and execute mineral leases on certain lands owned by them in Cameron parish. The agent's compensation was provided for in the following paragraph, viz.:

"It is expressly agreed and understood that the Agent shall be entitled to a commission in the form of a one-thirty-second (1/32) oil, gas and mineral royalty interest in and to the property described herein, if the Agent negotiates a lease for said Owner during the term of this contract and according to the terms and conditions as expressed herein, which said one-thirty-second (1/32) royalty interest resulting from the lease."

Within the time stipulated in the contract, the Calcasieu Development Company, Inc., on behalf of its principals, negotiated and executed in favor of one Charles G. Hooks a mineral lease on the terms and conditions and covering the lands set forth in the mandate. Subsequently, the lessors formally transferred to the Calcasieu Development Company, Inc., as compensation for its services, an interest in their royalties, described as "an undivided one-fourth interest in an undivided one-eighth interest in and to all oil, sulphur, gas and minerals on, in and under the property," as described. The instrument evidencing the transfer contained the following stipulations, viz.:

"It is understood between the parties hereto this conveyance is made subject to an oil, sulphur, gas and mineral lease executed in favor of Charles G. Hooks, of Beaumont, Texas, on the 5th day of September, 1927, by the Owner of this land, vendors herein, which said lease as executed is hereby ratified in full; and it is further understood that the oil, gas and other mineral interest herein transferred is out of a one-eighth (1/8) interest to be paid the vendor herein under the terms of said lease.

"To have and to hold the above described property together with all and singular rights and appurtenances thereto belonging unto the said purchaser, its successors and assigns, forever; and the vendors herein do hereby bind themselves, their heirs, executors and administrators to warrant and forever· defend the said property unto the Calcasieu Development Company, Inc., its successors and assigns, against any person lawfully claiming or to claim the same or any part thereof."

Charles G. Hooks, the original lessee, subsequently conveyed his lease to the Calcasieu Oil Company, Inc., the plaintiff herein. This lease was forfeited for nonpayment of rentals on January 24, 1930. The forfeiture was due to the erroneous belief of the officer of the lessee in charge of the payment of its rentals that the lessee's operations on adjacent lands owned by the lessors protected the lease in question. The error, however, proved to be a fortunate one for the lessee, which saved "some eight hundred dollars" thereby.

The Calcasieu Oil Company, Inc., discovered in the month of March, 1930, that its rights under the lease had been forfeited, but it took no immediate steps to regain them. More than six months later, after a geophysical survey had been made, and after a producing oil well had been brought in on adjacent land, negotiations for drilling rights were opened by the Calcasieu Oil Company, Inc., with the owners of the land. Meanwhile, Valery Doiron, the principal owner, had died, and the lease which was eventually agreed upon was entered into by his heirs and the other owners of the property with the Cal-

casieu Oil Company, Inc. This lease provided for the beginning of drilling operations within thirty days, and a reasonable continuance of operations thereafter. Two producing oil wells were brought in under its terms, and the accrued proceeds of the lessors' royalty were deposited in the district court to await the determination in this suit of the respective shares of the parties litigant therein.

The contracts of lease are wholly dissimilar. The parties are different and the terms and conditions are not the same. No fraud or collusion is charged, or even intimated. The good faith of the lessors and the lessees in both contracts is not impugned.

The validity of the claim of the Calcasieu Development Company, Inc., and its assigns for the one thirty-second royalty interest depends upon, and must be ascertained from the contract of agency and from the contract conveying the royalty interest.

Appellants contend that under the terms of those instruments they acquired an actual interest in the lands themselves, and are entitled to their proportionate share of the royalties accruing to the lands as one of the incidents of ownership, and not as the mere assignees of a portion of the royalty rights. Appellees, on the other hand, contend that the appellants acquired only royalty rights under the lease negotiated by the Calcasieu Development Company, Inc., and that those rights expired when the lease itself expired.

The contract of agency stipulates that, if the agent negotiates a lease, its compensation shall be "a one-thirty-second ($\frac{1}{32}$) oil, gas and mineral royalty interest in and to the property described, * * * which said one-thirty-second ($\frac{1}{32}$) royalty resulting from the lease."

The intent of the parties is awkwardly expressed, but we think their meaning is clear. The phrase, "which said one-thirty-second ($\frac{1}{32}$) royalty interest resulting from the lease," can only mean that the commission to the agent of one thirty-second royalty interest in the oil, gas, and minerals, previously referred to, is to be payable only out of the oil, gas, and minerals produced under the particular lease negotiated by the agent, and none other.

The act transferring the royalty interest, in compliance with the agency contract, describes it first as "a one-fourth interest in an undivided one-eighth royalty in and to all oil, sulphur, gas and minerals," stipulates that the transfer is made subject to the lease negotiated and executed by the agent, which is expressly ratified, and declares "that the oil, gas and other mineral royalty interest herein transferred is out of a one-eighth ($\frac{1}{8}$) royalty to be paid the vendors herein under the terms of said lease."

It seems plain that the royalty interest to be paid the lessors (vendors) under the "terms of said lease" means only the lease which the lessors' agent, Calcasieu Development Company, Inc., negotiated and executed in favor of Charles G. Hooks, which lease was subsequently acquired by the Calcasieu Oil Company, Inc.; that such interest was to be paid under all the terms of the lease, including that for the forfeiture of the lessee's rights, and that if, under the terms of the lease, without any fraud or collusion on the part of the lessors, the lease was terminated by the forfeiture of the lessee's rights, no roy-

alties are due the lessors, and, as a consequence, none are due its transferees.

Appellants lay considerable stress on the habendum clause contained in the act transferring the one thirty-second royalty interest. But the reference to "said property" as being held "forever" does not invest them with a fee simple title to an undivided one thirty-second interest in their vendors' lands.

The clause was not essential to the deed, which would have been effectual without it. The premises of the deed contained all the elements required for its validity—the names of the parties, the description of the property conveyed, the consideration for the transfer, and the granting and warranty clauses. The only purpose the habendum clause could serve was to emphasize the unconditional character of the vendee's title to the right which it acquired, namely, a one thirty-second royalty right in the minerals that might be produced from the vendors' land under the lease negotiated and executed by the vendee. The title and the right were coexistent. One could not exist without the other. When the right expired. the title by which it was created also expired.

For the reasons assigned, the judgment appealed from is affirmed.