LE BLANC, Justice.
 

 This is a suit in which the plaintiff, H. J. Wier, seeks to have himself recognized as, and declared to be the owner of a one-sixteenth (1/16) overriding royalty on, in and of all of the oil and gas produced and saved by the defendant, Alfred C. Glassell, Jr., his heirs, transferees and assigns from eleven different tracts of land all situated in the Parish of St. Landry, Louisiana, and fully described in the prayer of his petition.
 

 He alleges that on April 8, 1940, he assigned to the defendant, a resident of the Parish of Caddo, Louisiana, five, and on March 28, 1940, he assigned seven certain oil, gas and mineral leases of which he was the owner, affecting all of the properties covered by the said leases, as fully appears in acts of assignment duly recorded in the Conveyance Records in the Parish of St.Landry, copies of which are annexed to his petition; that the terms and conditions are fully set out in the said acts of assignment and that the principal consideration in each was the reservation by himself of an overriding royalty of l/16th of all of the oil and gas produced and saved from the properties, less any oil and gas used and consumed for fuel and power in the development of. and in operating the same.
 

 He alleges that the meaning of the language of the clause in which the consideration was expressed, and the intent in using that language was that he, as assignor, was reserving to himself, and defendant, as assignee, was granting to him a l/16th overriding royalty on and all the oil and gas which might be produced and saved from the properties covered by the leases described in the said assignment, under the said leases, or any other leases which the defendant
 
 might take,
 
 buy or procure on the same properties.
 

 Plaintiff avers that the execution date of all of the five leases assigned on April 8, 1940, was March 26, 1940, and as the primary term was five years, their expiration date was March 26, 1945. The execution date of seven leases assigned on March 28, 1940, was March 25, 1940 and as the primary term of the first of these seven leases was three years, its expiration date was
 
 *833
 
 March 25, 1943. The primary term of the other six of said leases was five years and their expiration date was therefore, March 25, 1945. With regard to all twelve leases, the lessee thereunder could keep them alive by payment of the rentals or otherwise, and that defendant, as the owner of the leases by virtue of the assignment, did pay the rentals due, annually, through the last rental payment date, thereby keeping the said leases alive for the full period of their primary terms.
 

 He then alleges that before March 26, 1945, the expiration date of the primary term of each of the first five leases mentioned, defendant acquired top leases on all the property covered by the first three by taking, directly, and in his own name from the respective owners of the lands covered by the said three leases, three new leases covering the said lands for a primary term of five years and nine months and had the same recorded in the Conveyance Records of the Parish of St. Landry, and that similarly, before March 26, 1945, the date of the termination of the fourth of the said five leases affected by the said assignment, the defendant acquired a top lease on the property covered by said lease by assignment, from one Fritz Muller, which the said Muller had taken from the owner of the property for a primary term of five years and nine months, and had the same recorded in the Conveyance Records of St. Landry Parish.
 

 The petition then recites that before March 25, 1943, before the termination of the primary term of the first of the seven leases mentioned, defendant acquired a top lease by assignment from Fritz Muller who had taken a lease from the property owner, and that with regard to this, as well as the other lease which Muller assigned to him, the said Muller was acting for the defendant as his agent.
 

 With reference to the second lease assigned by Muller, it is alleged that the defendant acquired the same in breach of faith with petitioner because the day before Muller took the lease from the property owner, he, plaintiff, telephoned defendant and informed him that he had an opportunity to preserve and perpetuate the lease which had been assigned, by some arrangement with the Pan American Production Company, which company had told him that it would begin operations for the drilling of an oil well on the property covered by that lease before the expiration of the primary term, and that the said defendant then asked him to go out and take a new lease from the property owner for their joint interest, but when he went to see the property owner on the following day he discovered that the said Muller had already taken a top lease and had had the same recorded, thereby preventing him from going forward with his opportunity to deal with the Pan American Production Company.
 

 
 *835
 
 Plaintiff then goes on to recite that the terms of the said assignments by him to the defendant, in which he expressly reserved the l/16th overriding royalty were in accordance with and in confirmation of the custom, usage and practice prevailing in the business of buying, selling and assigning oil, gas and mineral leases, rights and royalties, under which custom and practice it is recognized that the assignor retains the ownership of the reserved royalty in the property affected not only under those leases themselves but under any subsequent lease of the said property which may be acquired or taken by the assignee.
 

 He alleges further that he' and the defendant have been engaged for many years in the business of taking, buying, selling and assigning oil, gas and mineral leases, rights and royalties and that they are and were at the time of the execution of the assignment of these leases entirely familiar with the custom, usage and practices prevailing in the oil business and that in making the said assignment, they contracted in the light of and with reference to the said custom, usage and practice. Further that in the business of taking, buying, selling and assigning said leases, rights and royalties, it is generally and universally considered to be, and it is in fact, unethical, inequitable, immoral and illegal for the assignee of a lease in which the assignor has reserved an overriding royalty to take a top lease on the property affected by the assigned leases and that if the purpose of taking such a top lease is to circumvent or otherwise defeat said overriding royalty, said effort is completely unaváiling and the overriding royalty is unaffected thereby.
 

 Finally plaintiff alleges that had not the defendant taken the top leases he would have been able to protect and preserve his interests, represented by his overriding royalty by himself acquiring new leases or making arrangements for their preservation by having drilling operations commenced or otherwise, and that he was ready and willing to so protect and preserve his interest and would have done so had not defendant’s conduct made that impossible.
 

 Defendant filed an exception of no right or cause of action whereupon plaintiff filed a supplemental and amended petition in which he alleges that since the institution of his suit, defendant has drilled two oil wells on two of the tracts covered by the leases described in his original petition which two wells resulted in the production, of oil in paying quantities and have continued' to produce up to the present time, the amount of production, not being known 'to him but the defendant being fully informed as to all such facts. He then avers in detail further contacts on his part by telephone conversations with and letters to the defendant expressing his desire to be kept fully informed with regard to the said leases as he wanted to protect his interest in the same at all times and that therefore the defendant was warned-by him prior to
 
 *837
 
 the expiration of certain of the leases that he would stand upon his rights under the assignments therefor and that he would not yield or submit to a scheme which would defraud him of his royalty interest in all of the said leases.
 

 Defendant renewed his exception of no right or cause of action and the case was then submitted in the District Court on the said exception. Judgment was rendered in favor of the defendant dismissing the plaintiff’s suit at his costs and from that judgment plaintiff prosecutes this appeal.
 

 The foregoing statement of the pleadings might make it appear that the issues in this case are somewhat complicated but the real question that is involved concerns the right of the assignor of an oil, gas or mineral lease, who, as his principal consideration, reserved an overriding royalty interest in the oil or gas to be produced from the leased property, to exact or demand from the assignee, the same royalty interest reserved by him after the lease which had been assigned had expired by its own terms and the production of oil on the property covered is the result of a subsequent lease taken by the assignee. Stated in another form it may be asked: Does the existence of such an overriding royalty depend upon the existence of the lease itself to which it is attached and consequently expires with the termination of that lease, or does it attach to the land itself and continue to exist and to be attached to any future leases taken by the assignee on the same property?
 

 It may be proper to state at the outset that the agreements by which the leases were' assigned, although styled and referred to as “assignments”, they are 'really acts of sub-leases of the various leases which plaintiff had taken on the properties involved, to the defendant who then became a sub-lessee. The distinction between the two is pointed out in the case of Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264, wherein it is stated that:
 

 “in an assignment, th'e assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleased — by imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor.”
 

 Act No. 205 of 1938, provides:
 

 “ * * * that oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property ^ **
 

 
 *839
 
 Tims, we are here dealing with contracts relating to an incorporeal immovable, the transfer of which, under Article 2275 of the Revised Civil Code, “must be in writing”.
 

 The sub-leases in this case are in writing and certified copies are annexed by the plaintiff to his petition. Regardless therefore of what he has alleged with reference to them, they are controlling over his allegations and in construing them the court is limited to what is contained in them unless it should decide that there are some ambiguous terms and clauses for the interpretation of which it might have to resort to some other means of construction.
 

 With these thoughts in mind, we proceed to a consideration of plaintiff’s first contention that is, that the royalty reservation, being the principal consideration expressed in the agreements, his sole purpose and intent was to participate in the production from a development by the defendant of
 
 the lands
 
 covered by the lease. This is so, he contends, because the agreements each provide that the royalty reserved was to be a l/16th “of all of the oil and gas produced and saved from the property covered by the lease herein described.” However, in order to arrive at the intent of the parties, it is necessary to refer to all of the pertinent language by which the assignment and transfer was made instead of limiting ourselves to only a few words or phrases in the agreement.
 

 After reciting that in consideration of the sum of $100 and other valuable considerations, the assignor sells, assigns, transfers and delivers to the assignee, his successors and assigns, all of his rights and interests in all of the following described oil, gas and mineral leases covering the properties involved, and which are fully described, the agreement stipulates that,
 

 “ *
 
 * * as a further consideration for the execution of this assignment, assignor reserves as an overriding royalty one-sixteenth (1/16) of all of the oil and gas produced and saved from the property covered by the lease herein described, less any oil or gas used and conserved for fuel and power in all development and operating' said property, * *
 

 Further, it is provided as follows:
 

 “This overriding royalty shall be due assignor if, as and when said oil and gas are produced and saved as aforesaid, and the assignee herein shall be under no obligations to keep and preserve the said lease in force or effect nor to conduct any operations thereon. However, in the event the said assignee or his successors and assigns shall elect not to pay the rental on any of the property described in said lease, for any. reason whatever, then the assignee herein binds and obligates himself to so notify assignor in writing and within thirty (30)' days prior to the due date of the next rental, re-assign such lease or leases to the said assignor.”
 

 
 *841
 
 The language is clear and does not warrant the construction plaintiff would have the Court place on it, that because of the manner in which the reservation is expressed, that is, that the royalty reserved was to be of the oil and gas produced and saved
 
 from the property,
 
 that that meqnt it was reserved as to the oil and gas produced and saved from the property, not only under the leases that were being assigned, but under any future leases of the same property as well. The wording of the reservation indicates just the contrary intention, for it is expressly stated that the royalty is a one-sixteenth “of all of the oil and gas produced and saved from the property covered
 
 by the lease herein described
 
 (Italics ours). It cannot be implied in any manner, from the language used by them, that the parties ever intended contracting with respect to future leases covering the properties described in the leases. Moreover, the defendant by the terms of the agreement was relieved of the obligation of keeping even those leases in effect, if he did not care to do so. By his own allegations, however, plaintiff shows that defendant elected to keep them alive by paying the rental, and in doing so he relieved himself of the other obligations he had contracted which were (1) to notify plaintiff in writing, in the event he did not, and (2) within thirty days, re-assign the lease or leases to him.
 

 In Calcasieu Oil Company, Inc. v. Yount-Lee Oil Company, 174 La. 547, 141 So. 55 a contention somewhat similar to the one here presented was made by the holder of a royalty interest. The royalty had been transferred by the land owner to an agent, Calcasieu Development Company, Inc., in consideration of the latter having leased his land. The agent claimed its royalty interest still existed in a subsequent lease obtained by the owner of the former lease under which the royalty had been created and which had become forfeited for nonpayment of rentals. Production came after the subsequent lease had been taken and, as does the plaintiff in this case, the agent claimed its share on the ground that, by the language of the deed transferring its royalty interest, it had acquired an actual interest in the land and was entitled to its proportionate share of the royalty accruing to the land as one of the instances of ownership and not as the mere assignee of a portion of the royalty rights. The language in the deed transferring the royalty interest to the agent was somewhat similar to the language in the assignments in the case before us, as the expression in the transfer of the interest conveyed was one of an interest in and of the oil, gas and other minerals, “on, in and under the property.” Further stipulations in the deed showed that the conveyance was made subject to the oil, gas and mineral lease that had been granted by the vendor and that the mineral interest being transferred was to be paid out of the
 
 Ysth
 
 interest which the vendor was to receive under the terms of the said lease.
 

 
 *843
 
 This court found that the intent of the parties was “awkwardly expressed” in the deed but nevertheless held that the meaning was clear. It then stated as follows:
 

 “It seems plain that the royalty interest to be paid the lessors (vendors) under the ‘terms of said lease’ means only the lease which the lessor’s agent, Calcasieu Development Company, Inc., negotiated and executed in favor of Charles G. Hooks, which lease was subsequently acquired by the Calcasieu Oil Company, Inc.; that such interest was to be paid under all the terms of the lease, including that for the forfeiture of the lessee’s rights, and that if, under the terms of the lease, without any fraud or collusion on the part of the lessors, the lease was terminated by the forfeiture of the lessee’s rights, no royalties are due the lessors, and, as a consequence, none are due its transferees.”
 

 Likewise, in the instant case, it may be said that the royalty reserved by the assignor out of the oil and gas produced and saved from the property covered “by the lease herein described” meant only from the lease he was then transferring and assigning; that such royalty was to be paid under all the terms of that lease and when it terminated, all rights of royalty expired with it.
 

 Aside from the language of the assignment and the custom and practice alleged by plaintiff, it would seem that royalty, by its very nature) when created by a lessee, is dependent for its existence upon the lease under which it is created. In Vincent v. Bullock, 192 La. 2, 187 So. 35, 39, this court approvingly quoted the definition of the term royalty from Corpus Juris, Vol. 54, page 1107, as
 

 " * * * a share of the product or profit reserved by the owner for permitting another to use the property * * * the compensation provided for the privilege of drilling for oil and gas, and consists of a share in the oil and gas produced
 
 under existing leases
 
 * * ■*.” (Our Italics.)
 

 The same language is used in the more recent edition, 58 Corpus Juris Secundum, Mines and Minerals, page 537, § 213. The opinion Vincent v. Bullock also quotes at length from “Mineral Rights in Louisiana” by Mrs. Harriet Spiller Daggett in which she refers to royalty as being “an appendage” to the right on which it depends for its continued existence. That same authority was used in the recent case of Continental Oil Co. v. Landry, 215 La. 518, 41 So.2d 73, 75, where, in contrasting mineral rights and royalty, it is stated:
 

 “The owner of the mineral right has the right of ingress to, and egress from, the land, the right to produce the minerals, the right to participate in the bonuses and delay rentals paid under the terms of any lease. On the other hand, the owner of a royalty right has none of these rights, nor is his consent even necessary for the execution of a lease by the mineral owner, his right being to share in production if and when it is had. Of these two rights it has
 
 *845
 
 been correctly said by one of the authorities on the oil and gas law of this state that the royalty right is but an appendage of the right of the mineral owner,
 
 and depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own, any more than could interest exist apart from the note or debt to which it is attached.
 
 See Daggett, Mineral Rights in Louisiana (1939), p. 173.” (Our Italics.)
 

 The overriding royalty reserved by the plaintiff in the present case was a right created by the lease in which he was the lessee and which he assigned to the defendant. It depended on the continued existence of that lease to which it was an appendage. It could have no greater life than the lease itself and consequently upon the termination of the lease it became extinguished and the defendant was at liberty to deal with the owners of the property and obtain new leases either in his own name or through an agent. The allegation in plaintiff’s petition that in respect to some of the leases subsequently obtained by Fritz Muller, Muller was acting as defendant’s agent, adds nothing to his right or cause of action.
 

 The view we take of the language and meaning of the agreements themselves under which plaintiff assigned the lease and of their nature, makes it easy for us to dispose of plaintiff’s contention regarding the custom, usage and practice that prevails in the oil business, in the light of which he alleges that he and the defendant entered into these contracts. If we had doubt as to the meaning of the terms of the agreements and found ambiguity in any of their clauses, it might well be that plaintiff should be permitted to resort to parol proof of such custom as he alleges, but we find nothing ambiguous in their language nor in the terms and conditions they con-, tain. On the other hand, the royalty interest which plaintiff is 'seeking to have himself recognized as the owner of, being an incorporeal immovable, and being in writing, all as heretofore pointed out, it is clear that parol evidence would not be admissible . to show that the parties intended to contract with reference to future leases as well as the leases- that were being assigned, nor, indeed, with regard to any other intention than the one expressed in the contracts of assignment themselves. Tó permit parol evidence of the nature such as plaintiff would want to elicit under the allegations of his petition would be to permit him to prove title to an incorporeal immovable by parol and this he could not do in view of the specific provisions of Articles 2275 and 2276 of the Revised Civil Code.
 

 This brings us now to a consideration of plaintiff’s last 1 contention which seems to be based on the “Constructive trust” theory which implies the violation of some fiduciary relation. Certainly no such relation arose out of, or appears from the assignments themselves and were plain
 
 *847
 
 tiff to attempt to prove breach of trust byparol, he would be met with the same rule of evidence against proving title to an immovable by such proof. All his allegations with regard to his having been denied the opportunity of acquiring new leases himself because of the top leases taken by defendant, adds nothing to his petition and neither does the fact that in some instances, defendant’s top lease was taken during the last months of the primary term of the assigned leases, after the last rental due had been paid. The answer to all of this, it strikes us, is that plaintiff had conveyed to the defendant all of his rights, title and interest in those leases and had reserved to himself
 
 only
 
 a share in any production that might develop during their existence. Had production come in those instances where the top leases were taken within a few months of the expiration of the primary term, his overriding royalty would have come into being as to those; but that did not happen and he is therefore in no better position with regard to these than with regard to any of the other leases.
 

 Counsel for plaintiff stresses the element of fraud and bad faith growing out of defendant’s alleged breach of trust. Assuming however, that the allegations of the petition with regard to these matters are allegations of fact and not merely conclusions of the pleader, they would avail plaintiff nothing for here again, a rule of evidence would apply against him. In Scurto v. Le Blanc, 191 La. 136, 151, 184 So. 567, 572 it was held that,
 

 “ * * * although parol evidence is admissible for a plaintiff to prove that he was divested, by fraudulent means, of a title to real estate which he once owned, parol evidence is not admissible — even when fraud is alleged — to establish a title to real estate in one who did not previously own the property. * *
 

 See also Cernich v. Cernich, 210 La. 421, 27 So.2d 266. Plaintiff here is not claiming that he has been divested of the royalty he had reserved under the leases he had assigned to the defendant but what he is seeking to do is to have a royalty right, similar to the one he had reserved, impressed on the top leases subsequently taken by the defendant, as, he contends, these top leases were obtained through fraud and breach of trust, for the purpose of defeating his rights. What he is attempting to do is, in effect, to establish a new title to a royalty right and this, in view of the authority cited, he cannot do even though fraud be alleged.
 

 Counsel's argument on this phase of the case addresses itself strongly to equitable considerations but where there is express law governing the issues that are presented, the court will not resort to equity in deciding them. Revised Civil Code, Article 21.
 

 For the reasons stated, the judgment appealed from is affirmed at the costs of the plaintiff, appellant herein.'