AYRES, Judge.
The plaintiff, as the purchaser of crude oil produced from a well drilled and completed by Mills Toolce-Properties, Inc., les-, see of I. R. Packard, on a tract of land comprising approximately /ioo acres situated in -the Southeast Quarter (SE J4) of Section One (1), Township Twenty North <20- N.), Range. Sixteen West (16 W.); Caddo Parish, Louisiana, and.known and designated as the I. R. Packard Strip, instituted this concursus proceeding, alleging that it had been unable to pay and distribute the sum of $1,119.33, representing the proportionate ' value of the oil produced and marketed'.from: (a) %i2j (b) 2J4i2; (c) %i2, and (d) W512 of the value of the oil produced from said well from June 1, 1948.to October- 1, 1951, because there exists a controversy- between Bill Gary, Rowland Savage and John Graham Savage on the one hand and Leslie P. Beard on the other hand,.as to the right to receive the interests described-as (a) and (b), and between Bill Gary; Rowland Savage and John Graham Savage on the one hand, and Mrs. Mary M-.. Cloney on the other hand, as to the interest described -as (c) ; and between .Bill Gary, Rowland Savage and John Graham Savage on the one hand, and Mrs. Frances B. Metcalf on the other as to the interest described as (d). ,
A compromise and settlement was effected among the claimants as to the interest described as (d)..
The case was -tried on an agreed statement of facts filed in the record. Judgment was rendered in,the lower court recognizing the claims -of Leslie P. Beard and Mrs. Mary M. Clon.ey. and holding valid their overriding royalty interests, and rejecting the claims- of Bill Gary, Rowland Savage and John Graham Savage, who have appealed- from said judgment to this Court.
The record and the agreed statement of facts establish:
(1) That I. R. Packard, acting as the owner, af the time, of the oil, gas 'and minerals on the aforesaid tyioo acres, under date of November 13, 1947, executed an oil, gas ánd mineral lease to Mills Tooke Properties; Inc.;
(2) That Bill Gary, Rowland Savage and John Graham Savage were the record owners of the oil, gas and other minerals in the SEJ4 of the SE^j less a strip 495 feet wide across the. south side, Section One, Town-, ship Twenty North, Range Sixteen West, *146 but they contended that the so-called Packard Strip was located within the description of their property;
(3) That subsequent to the date of said lease, Mills Tooke Properties, Inc., drilled a producing well on the property leased by it as aforesaid from I. R. Packard, which well has since continued to produce oil in paying quantities;
(4) That Bill Gary, Rowland Savage and John Graham Savage, claiming to have been disturbed in their possession as owners of the mineral rights affecting the SE*4 of the SE14 of 'Section One, Township Twenty North, Range Sixteen West, less the south 495 feet thereof, by the drilling of a well known as Packard No. 1, within the westernmost limits of the above-described property, instituted proceedings on March 26, 1948, against I. R. Packard who claimed to be the owner of a strip of land on which the above well is located, containing approximately Wioo of an acre; Mills Tooke Properties, Inc., as mineral lessee of Packard; and A. G. Thompson, Quad Drilling Corporation and Stanley W. Metcalf, who acquired overriding royalties from Mills Tooke Properties, Inc., seeking to be declared the owners of all the oil, gas and other minerals in and under the above-described property, including the strip of land claimed by the defendants, and asked for an accounting of all the oil produced, saved and sold from the Packard No. 1 well. In the alternative, if the Court concluded that this strip was not in their title, they claimed title thereto by estoppel and by the prescription of ten and thirty years acquirendi causa.
Separate answers were filed by I. R. Packard, in which he was joined by Quad Drilling Corporation and by Mills Tooke Properties, Inc., in which it was joined by A. G. Thompson and Stanley W. Metcalf, containing substantially the same denials and averments, with the exception that Mills Tooke Properties, Inc., called Packard in warranty, and, in an alternative plea, sought recovery of the costs of the drilling of the well. The defendants denied having disturbed plaintiffs in their possession, claiming that the property in controversy was 'located entirely within the SWj4 of the SE14 of said Section One, and not within the boundaries of plaintiffs’ mineral servitude ;
(5)That on the trial of said cause in the District Court, the property described in the lease from Packard to Mills Tooke Properties, Inc., was held located in the SW14 of the SE*4 of said Section One, and owned by I. R. Packard, and as such was included in said lease, and that accordingly it was held that the plaintiffs therein had no right, title or interest thereto.
From that judgment, an appeal was taken by the plaintiffs to the Supreme Court, whereupon that Court on May 29, 1950, rendered judgment holding that the Packard strip was in the SEj4 of the SEj4, and, therefore, owned by Bill Gary, Rowland Savage and John Graham Savage. The judgment of the District Court accordingly was reversed, but it reserved to Mills Tooke Properties, Inc., its right to seek, in a separate proceeding, the cost of the drilling of the well.
The defendants in that action in due course applied for a rehearing, but before action thereon by the Court, Mills Tooke Properties, Inc., and Stanley W. Metcalf voluntarily withdrew their applications for rehearing, and acquiesced in said judgment as first rendered by the Supreme Court, and Mills Tooke Properties, Inc., accepted from the plaintiffs the amount of the cost of the drilling of said well. The effect of that judgment and its acquiescence in by the lessee, Mills Tooke Properties, Inc., was that the lease from Packard to Mills Tooke Properties, Inc., was annulled and declared null and void and without force or effect.
I. R. Packard pursued his application for rehearing and a rehearing was granted, and on such rehearing November 6, 1950, the Supreme Court held that the so-called Packard strip was located in the SWj4 of the SE^ of said Section One, and thereby *147 rejected plaintiffs’ demands in that suit. See Savage v. Packard, 1950, 218 La. 637, 50 So.2d 298;
(6) That after the aforesaid suit was filed in the District Court, Mills Tooke Properties, Inc., on September 24, 1948, sold and assigned to Mary McDonough Jennings, now Mary M. Cloney, an undivided one-sixty-fourth of seven-eighths (%4 of %ths) overriding royalty interest in the lease acquired by it from I. R. Packard, and that likewise on May 30, 1948 and October 1, 1948, the said lessee sold and assigned to Leslie P. Beard overriding royalty interests in and to the aforesaid lease of an undivided one-sixty-fourth of seven-eighths (%4 of %ths) and an undivided three-sixty-fourths of seven-eighths (%4 of %ths), respectively;
(7) A notice of lis pendens of the filing of the aforesaid suit in the District Court was filed and recorded, but the description of the property was limited to the SE14 of the SE14. It was stipulated that Leslie P. Beard and Mrs. Mary M. Cloney, who were not made parties to the suit, had no actual notice or knowledge of said notice of lis pendens when they acquired said overriding royalty interests. , ■,
To state the matter briefly, I. R. Packard leased the so-called Packard strip to Mills Tooke Properties, Inc., which granted and assigned overriding royalties in said lease to Beard and Cloney after the suit had been filed by Bill Gary, Rowland Savage and John Graham Savage. The District Court rejected their demands, and on appeal to the Supreme Court, the Supreme Court reversed the District Court and sustained plaintiffs’ demands by holding that the so-called Packard strip was located within the boundaries of plaintiffs’ property, and in the SE^ of SE^. On a rehearing, the Supreme Court, after considering conflicting surveys, held that the Packard strip was located in the .SW14 of the SE54 and affirmed the judgment of the District Court. Prior to that final decision, the lessee acquiesced in the judgment, which held, in effect, that it had no lease on that property.
The • question to be determined is the effect of that action and judgment upon the overriding royalty interests of Beard and Cloney flowing from and out of a lease which by final judgment, as to the lessee, was held not to exist, or stated differently, whether the overriding royalty interest in the lease existed independently of the existence of the lease itself.
The foregoing statement of the facts would tend to make it appear that the issues in this case are somewhat complicated. However, as stated hereinabove, the principal issue and the one determining the decision to be reached herein, is simply whether or not an overriding royalty interest in and to and flowing from a certain specifically designated lease can exist independently of that lease, or when that lease has been held null and void and without force or effect or nonexistent.
The overriding royalty contracts from Mills Tooke Properties, Inc!, to Leslie P. Beard and Mary M. Cloney contained identical phraseology except as to the interest conveyed, and the names of the parties, a pertinent part of which reads as follows:
“ * * * that it does by these presents sell and assign to Leslie P. Beard, free and clear of any expense whatsoever, an overriding royalty interest of one sixty-fourth of seven-eighths (%4th of %ths) of all the oil, gas or other minerals which may be produced saved or marketed from the hereinafter described land under the terms of that certain oil, gas and mineral lease executed by I. R. Packard m favor of Mills Tooke Properties, Inc., on November 13, 1947, recorded in Conveyance Records of Caddo Parish * * *»
It appears, therefore, from the instrument itself that the royalty interest payable under such instrument was to be payable only out of and limited to the oil, gas and minerals produced under that particular lease and no other.' This was the holding in Calcasieu Oil Co., Inc. v. Yount-Lee Oil Co., 1932, 174 La. 547, 141 So. 55, 57.
*148 In this case the royalty specified depended upon the lease as granted by Packard to Mills Tooke Properties, Inc., and when this lease was in effect declared nonexistent, the royalty flowing therefrom likewise ceased to exist. Mrs. Daggett in “On Louisiana Mineral Rights”, 1949 Edition, p. 247, stated:.
“ * * * The royalty depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own any more than could interest exist apart from the note or debt to which it is attached. If a party to a contract sells royalty under an existent lease, he is selling a part or the whole of his rent due from the lease upon which his royalty depends. If he sells royalty under an existing servitude, he is selling a part of the proceeds to issue from the use of that servitude and the royalty sale is dependent upon the life and use of the servitude.”
Reference is made to a similar statement of the author in the ■ 1939 edition in the case of Continental Oil Co. v. Landry, 1949, 215 La. 518, 41 So.2d 73, 75, wherein it is stated:
“ * * * ' The owner of the mineral right has the right of ingress to, and egress from, the land, the right to produce the 'minerals', the right to. participate in the bonuses and delay rentals paid under the terms of airy lease. On the other hand, the owner of a royalty right has none of these rights, "nor is his consent even necessary for'the execution of a lease by the minerál owner, his right being to share in production if and when it is had. Of these two rights it has been correctly said by one of the authorities on the oil and gas law of this state that the royalty right is but an appendage of the right of the mineral owner, and depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own, any more than could interest exist apart from the note or debt to which it is attached.”
See also Wier v. Glassell, 1950, 216 La. 828, 44 So.2d 882, 887, 888. In that case the Court said:
“Aside from the language of the assignment and -the custom and practice alleged by plaintiff, it would seem that royalty, by its very nature, when created by a lessee is dependent for its existence upon the lease under which it is created. In Vincent v. Bullock, 192 La. 2, 187 So. 35, 39, this court approvingly quoted the definition of the term royalty from Corpus Juris, Vol. 54, page 1107, as
“ ‘ * * * a share, of the product or profit reserved by the owner for permitting another to use the property * * * the compensation provided for the privilege of drilling for oil and gas, and consists of a share in the oil' and gas produced under existing leases * * *7 (Our Italics.)
. “The same, language is used in the more recent edition, 58 Corpus Juris Secundum, Mines and Minerals, page '537, §213.”
In that case it would .also appear that Wier assigned to Glassell certain oil, gas and mineral leases, reserving to himself certain overriding royalty interests in the production from sáid leases; that subsequently Glassell acquired. other leases,, or top leases, and all the former leases terminated. The Court held that the overriding royalty depended upon the continued existence of the lease or leases to which it was an appendage and the royalty did not extend to the subsequent leases. The Court said:
“The overriding royalty reserved by the plaintiff in the present case was a right created by the lease in which he was the lessee and which he assigned to the defendant. It depended on the continued existence of that lease to which it was an appendage. It could have no greater life than the lease itself and consequently upon the termination of the lease it became extinguished * * *.”
*149 Indeed, when there was before it the subject matter of the controversy here, the Supreme Court, on rehearing in Savage v. Packard, 1950, 218 La. 637, 50 So.2d 298, 306, stated with reference to the overriding royalty interests:
“Counsel for the plaintiffs and appellants argue in the opening paragraph of a brief filed here on October 13,-since this case was argued and submitted on rehearing, that of the five defendants here, one, A. G. Thompson, claiming an overriding royalty interest, did not apply for a rehearing; and of the four who did apply for a rehearing, I. R. Packard, claiming ownership of the land, Quad Drilling Corporation, claiming an overriding royalty, Mills Tooke Properties, Inc., the mineral les--see, and Stanley W. Metcalf, claiming an overriding -royalty, the latter two withdrew their application for a rehearing acquiescing in the opinion of this Court handed down on May 29, 1950; thus leaving only a %6th mineral interest involved in this law suit.
“While it is true that where one fails' to apply for a rehearing,’ or withdraws his application for a rehearing once applied for, judgment as' to that 'party becomes final after the required time for application for a rehearing has expired, this does not mean that there remains only a %eth mineral interest involved in this suit as contended by plaintiffs. Counsel, has obviously overlooked the fact that the party defendant who did not apply for a rehearing, and the two who withdrew their application after filing, are not -owners of any part of thé realty involved, nor of any of the mineral rights. The defendant Mills Tooke Properties, Inc., was only Packard’s lessee; and the defendants Thompson and Metcalf acquired only so-called overriding royalties from the lessee and therefore their rights are not greater than those of Mills Tooke Properties, Inc.”
The statement relative to the overriding royalty interests of Thompson and Metcalf is equally applicable to the overriding royalty interests of Beard and Cloney.
It is, therefore, our opinion that the judgment of the District Court recognizing the claims of Leslie -P. Beard and Mary M. Cloney is erroneous.
For the reasons assigned, the judgment appealed from is reversed and set aside,' and there is now judgment in favor of appellants, Bill Gary,' Rowland Savage and John Graham Sávage, recognizing and decreeing them to be the’ owners of the sum now on deposit in the registry.of. the ÍFi'rst Judicial District Court in and for Caddo Parish, Louisiana, and such further sums as may be deposited by the plaintiff to the credit of the 3%i2 interest iri' the oil produced from the well' herein involved and the clerk of said court'is'hereby authorized and directed to pay over said deposits accordingly after first deducting the costs of court therefrom, which costs, together with the costs' of this appeal, are' hereby cast against Leslie P. Beard and Mary M. Cloney, appellees herein.