**Mrs. A. O. BARTON (Formerly Lillian Daigre Jumonville)**

v.

**John E. JUMONVILLE.**

**Civ. A. No. 81–447–A.**

United States District Court,
M. D. Louisiana,
Civil Division.

Dec. 17, 1981.

---

James L. Dendy, Baton Rouge, La., for plaintiff.

William S. Strain, Baton Rouge, La., and Bob F. Wright, Lafayette, La., for defendant.

JOHN V. PARKER, Chief Judge.

This action is a dispute between a former wife and husband over their community property settlement agreement. The Court has jurisdiction because of the diverse citizenship of the parties and the amount in controversy exceeds $10,000. 28 U.S.C. § 1332(a). Plaintiff and defendant have each filed a motion for summary judgment. The motions have been orally argued and submitted to the Court on written briefs.

The following facts are undisputed:

Plaintiff, then Mrs. Lillian D. Jumonville, obtained a judgment of separation from bed and board from defendant on July 17, 1958. On August 8, 1958, plaintiff and defendant entered a community property settlement partition, under the terms of which plaintiff received some items of property, including a lot in Iberville Parish and defendant's promissory note and defendant agreed to pay all community debts. In exchange for that which she received, plaintiff conveyed all of her interest in the community property to defendant (excluding the lot in Iberville Parish). The immovable property included a parcel of land in West Baton Rouge Parish known as the "Addis Tract" and a tract of land in Pointe Coupee Parish, both of which are the objects of the present dispute. On October 17, 1960, plaintiff obtained a final decree of divorce from defendant. The defendant apparently failed to pay the promissory note and at some point plaintiff instituted suit against de-

fendant on the note. Apparently as a result of that litigation, the parties executed an agreement entitled "Settlement of Community with Agreement of Compromise" on June 1, 1962. Under the 1962 agreement, the parties ratified the 1958 agreement (except as modified by the 1962 agreement). The note was cancelled, plaintiff received a cash payment from defendant, defendant agreed to pay plaintiff a sum equal to 40% of the net sales price above $200,000 of the Addis Tract, defendant delivered plaintiff a royalty deed covering the Pointe Coupee property and defendant again transferred the lot in Iberville Parish to plaintiff while agreeing to pay off the then existing mortgages.

Plaintiff brought this action alleging that defendant had failed to comply with the terms of the 1962 agreement, that defendant deceived her and deprived her of her one-half of the community, that the agreement contains a potestative condition and is therefore null and she prays for judgment declaring the 1962 agreement null, for an accounting from defendant and for a partition of the community. By amended complaint, plaintiff alleges that the 1962 agreement is void because plaintiff failed to deliver royalties to her and because defendant failed to sell the Addis Tract in accordance with the agreement and to pay her her share of the proceeds; in the alternative plaintiff alleges that if the agreement is not null, then she is entitled to specific performance ordering defendant to convey royalties to her and to sell the Addis Tract. By a motion plaintiff has abandoned her claims of nullity of the 1962 agreement, leaving as the only issues plaintiff's claims for specific performance regarding the Addis Tract and the royalties on the Pointe Coupee property. It should be noted that in 1979 defendant executed a mineral lease on the Pointe Coupee property and that production has been obtained thereunder.

With regard to the Addis Tract, the 1962 agreement provided, in pertinent part:

"... Mr. Jumonville unconditionally agrees that if and when he sells, or otherwise disposes of, [the Addis Tract] that he shall pay Mrs. Shores an amount equal to 40% of the net amount received by Mr. Jumonville from the sale and/or other disposition of said property that exceeds $200,000 ...

In connection with his obligation under the next preceding paragraph, Mr. Jumonville agrees that not later than seven years from the date of this agreement, that he will list the aforementioned 365 acres for sale with a realtor within the state of Louisiana, of his own selection, with authority to sell the said 365 acres for not less than $1,000 per acre; Mr. Jumonville unconditionally obligates himself to accept the best offer that is received for the said 365 acres during a period of one year from the date of said listing except that no offer for less than $1,000 per acre shall be considered acceptable. Moreover, if an offer for at least the minimum per acre is not received, Mr. Jumonville *shall not be obligated to sell* the said 365 acres but his obligation to Mrs. Shores under the next preceding paragraph shall, nevertheless, remain in full force and effect ..." (emphasis supplied)

Defendant has filed affidavits attesting that within seven years after the execution of the agreement he did in fact list the property for sale with a realtor in the State of Louisiana, that the listing was maintained for at least one year and that no offers to buy the property were received. Plaintiff does not dispute these facts, but argues that defendant's obligations to pay her "if and when" he sells the property is an obligation with an indefinite term and that she is entitled to an order from the Court requiring defendant to sell the property now. (Plaintiff has abandoned her claim that this portion of the agreement contains a potestative condition rendering the entire agreement null).

Defendant responds that the undisputed material facts show that he has complied fully with the terms of the 1962 agreement regarding potential sale of the Addis Tract and that since he did list the property for at least one year with no offers being made,

then under the clear terms of the agreement he "shall not be obligated to sell the said 365 acres." Defendant's argument is that, since the 1962 agreement, by its terms, binds the "heirs, legal representatives and assigns" of the parties, plaintiff, her heirs, legal representative or assigns will receive that which is due under the agreement at such time as the property may be sold.

Plaintiff has cited no authority for the proposition that this Court may impose a reasonable term or indeed any term for the sale of the property. The provisions of the 1962 agreement quoted above are clear that, in the event the property is listed and no offers are received the defendant is not obligated to sell the property but that if and when he does sell it, plaintiff is entitled to her share. It is not disputed that defendant has complied with the listing requirements of the agreement and under these circumstances he cannot be compelled to sell the property. A court, in construing a contract, is not permitted to concern itself with the wisdom of the terms. *Salles v. Stafford, Derbes & Roy,* 173 La. 361, 137 So. 62 (1931). Plaintiff therefore is not entitled to judgment in her favor on the Addis property.

Plaintiff makes an intriguing argument regarding defendant's obligation to deliver royalties. As noted above, there is now production on the Pointe Coupee property under a 1979 mineral lease granted by defendant. The royalty deed was dated June 1, 1962 and was recorded in the conveyance records of Pointe Coupee Parish. Defendant takes the position that all of plaintiff's rights under the royalty deed have prescribed under Louisiana's ten year liberative prescription because there was no production until more than ten years elapsed after the date of the royalty deed. La.Civ. Code articles 3528, 3529, 3549. Plaintiff argues that defendant's obligation under the 1962 agreement was not limited to the royalty deed delivered simultaneously with its execution but that defendant's obligation extended to delivery of successive royalty deeds under each mineral lease granted by him.

Plaintiff argues that the royalty deed here involved was somehow different from the ordinary royalty deed issued by landowners in Louisiana and that it created a personal obligation upon defendant to deliver royalties to plaintiff. Plaintiff further argues that the royalty deed did not create a real right or obligation running with the land which was subject to prescription for non-use. Plaintiff also argues that although the royalty deed did not create a real right in favor of plaintiff in the immovable property, it did impose a real obligation upon the defendant. Plaintiff has not satisfactorily explained how this could be.

Nevertheless, it is significant that the 1962 agreement imposes no obligation upon defendant to deliver royalties to the plaintiff. The only mention of royalty in the 1962 agreement is that defendant has simultaneously executed and delivered to plaintiff a royalty deed covering the Pointe Coupee property. Thus, plaintiff can make no claim for royalty arising from the 1962 agreement apart from the royalty deed itself.

The royalty deed provides, in pertinent part:

"The royalty interests and rights herein sold, transferred and conveyed are:

An undivided one-fourth (25%) of any royalty or royalties, including an undivided one-fourth (25%) of any additional or excess royalty or royalties payable under or by virtue of any oil, gas or mineral lease covering or affecting the hear and above described lands; . . .

This sale and transfer is made and accepted subject to an oil, gas and mineral lease now affecting said lands but the royalties herein above described shall be delivered and/or paid to the purchaser out of deducted from the royalties reserved to the lessor in said lease. This sale and transfer, however, is not limited to royalties acruing under the lease presently affecting said lands but the rights herein granted are and shall remain a charge and burden on the land herein

described and binding on any future owners or lessee of said lands and, in the event of the termination of the present lease, the said royalty shall be delivered and/or paid out of the whole of any oil, gas or other minerals produced from said land by the owner, lessee or anyone else operating thereon.

The grantor herein reserves the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the grantee herein, the royalty rights herein convey; . . ."

Plaintiff argues that the above quoted language exempts this particular royalty deed from the ten year liberative prescription by its reference to future leases. Plaintiff cites cases involving *overriding* royalty interests, created by mineral leases, in support of her position, particularly *Wurzlow v. Placid Oil Co.*, 279 So.2d 749 (La.App. 1st Cir. 1973) *writ ref.* 282 So.2d 140 (1973).

No amount of discussion or analysis can change plaintiff's royalty deed. It is not an overriding royalty but it is one created by the landowner and Louisiana's jurisprudence is long and uniform that however created and however phrased or worded, when the landowner establishes a royalty that instrument constitutes a real right which is subject to the ten year liberative prescription. See, for example *Vincent v. Bullock*, 192 La. 1, 187 So. 35 (1939), where the royalty interest was created by a reservation in a sale of the property and *Humble Oil and Refinery Co. v. Guillory*, 212 La. 646, 33 So.2d 182 (1947), where the royalty interest was created by royalty deed executed by the landowner, as is the case here.

Plaintiff's reliance upon *Wurzlow v. Placid Oil Co., supra*, and other overriding royalty cases is misplaced, as a quote from that case will demonstrate:

"A final facet of defendant's argument on prescription is its attempt to bring the right of plaintiff within the prescription of Articles 3529 and 3546 of the Civil Code under which mineral servitudes and mineral royalty interests carved out of the fee title to land have been held to expire if *not used* within ten years from the date created. See *Frost-Johnson Lumber Co. v. Salling's Heirs*, 150 La. 756, 91 So. 207 (1922) and *Vincent v. Bullock*, 192 La. 1, 187 So. 35 (1939). Use as to a mineral servitude sufficient to interrupt prescription occurs when good faith drilling is undertaken on the land subject to the servitude, whether successful or not, and *use* of a mineral royalty interest sufficient to interrupt prescription occurs when a well capable of producing oil or gas in commercial quantities is completed on the lands subject to the mineral royalty interest.

The Court has concluded that defendant's attempt to compare the right asserted by plaintiffs herein to an 'overriding royalty interest' to be carved out of a lessee's interest in an oil, gas and mineral lease, with a 'mineral servitude' or 'mineral royalty interest,' both of which are dismemberments of the fee title to land, is inappropriate. The *use* requirement inherent in the mineral servitude and mineral royalty interest doctrines are founded in a strong public policy against the continued dismemberment of the fee title to land and have nothing to do with an obligation to transfer an 'overriding royalty interest' in oil, gas and mineral leases which are themselves simply rights *upon* the land as opposed to dismemberments of the fee title. In point are *Wier v. Glassell*, 216 La. 828, 44 So.2d 882 (1950) which defines an overriding royalty interest as a mere 'appendage' of the lease and *Reagan v. Murphy*, 235 La. 529, 105 So.2d 210 (1958), in which the Supreme Court refused to apply the ten year liberative prescription applicable to mineral servitudes and mineral royalty interests to oil, gas and mineral leases." 279 So.2d at 749. (emphasis by the Court)

■■ In 1962 plaintiff received a royalty deed created by the owner of the Pointe Coupee property. That is all she received. That instrument was a species of dismemberment of title; it created a real right and it was subject to the prescription of ten

years liberandi causa. *Humble Oil and Refining Co. v. Guillory, supra.* The royalty deed constituted a burden upon the land which remained fully effective for a period of ten years from the date of the execution or creation of the royalty interest. It continued in effect without regard to the expiration of existing leases or the execution of new leases by the landowner but it expired when there was no production from which to pay royalty within ten years. There having been no production within a period of ten years subsequent to execution of the royalty deed, it has prescribed and it no longer bears upon or affects the Pointe Coupee property. For these reasons plaintiff is not entitled to summary judgment regarding the Pointe Coupee property and defendant is entitled to summary judgment because the undisputed material facts show that, as a matter of law, defendant is entitled to judgment.

Accordingly, plaintiff's motion for summary judgment is hereby DENIED and defendant's motion for summary judgment is hereby GRANTED. Counsel for defendant shall prepare a form of judgment, shall submit it to opposing counsel for approval and shall submit it to the Court for signature.