# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-834


CLK COMPANY, L.L.C.

VERSUS

CXY ENERGY, INC.


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 72,370
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE

************

## MICHAEL G. SULLIVAN
## JUDGE

************

Court composed of Michael G. Sullivan, Glenn B. Gremillion, and Billy Howard Ezell, Judges.


**AMENDED IN PART; AFFIRMED IN PART; AND RENDERED.**

John M. McCollam
Gordon, Arata, McCollam, Duplantis & Eagan
201 St. Charles Street, Suite 4000
New Orleans, LA 70170-4000
(504) 582-1111
Counsel for Plaintiff/Appellee:
        CLK Company, L.L.C.

Michael H. Rubin
McGlinchey Stafford, PLLC
One American Place, 14th Floor
Baton Rouge, Louisiana 70825
(225) 383-9000
Counsel for Defendant/Appellant:
        CXY Energy, Inc.

**John Anthony Dunlap**
**Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, L.L.C.**
**1100 Poydras Street, Suite 2700**
**New Orleans, Louisiana  70163**
**(504) 585-3800**
**Counsel for Defendant/Appellant:**
    **CXY Energy, Inc.**

**SULLIVAN, Judge.**

This is a suit for breach of contract. Plaintiff sued to obtain the assignment of an overriding royalty interest, costs, expenses, including attorney's fees, damages, and interest. After a jury trial, judgment was rendered in favor of Plaintiff. Defendant appealed, and Plaintiff answered the appeal. For the following reasons, we amend the judgment of the trial court to award interest on the award of attorney's fees from the date of judgment, and we award attorney's fees and costs for work performed on this appeal, together with interest until paid. The judgment is affirmed in all other respects.

### *Facts*

CLK Company, L.L.C. (CLK) is a Louisiana consulting firm that generates drilling prospects for oil and gas companies. In the early 1990s, CLK identified an oil and gas prospect over a portion of Lac Blanc in Vermilion Parish. CLK primarily provides contract services to Freeport-McMoran (McMoran), but McMoran allows CLK to market prospects that it is not interested in pursuing to the oil and gas industry at large.

In late 1992, the Louisiana State Mineral Board (Mineral Board) included a substantial portion of CLK's Lac Blanc prospect in a Notice of Proposed Lease Sale. McMoran advised CLK that it was not interested in pursuing the Lac Blanc prospect, and CLK began marketing the prospect to other exploration companies. CXY Energy, Inc. (now known as Nexen Petroleum Corporation and hereinafter referred to as Nexen) owned a small percentage of the seismic data CLK reviewed and interpreted which contributed to CLK's interest in Lac Blanc as a prospect, and CLK contacted Nexen to see if it was interested in pursuing the prospect.

1

On December 4, 1992, CLK and Nexen entered into a Confidentiality Agreement in which CLK agreed to provide geophysical and geological services to Nexen in exchange for a 3.125% of 8/8ths overriding royalty interest, if Nexen acquired an interest or the right to acquire an interest in its prospect. Nexen requested and CLK agreed to two modifications of its proposed Confidentiality Agreement, i.e., reducing the term from two years to one year and excluding certain depths and areas from the proposed prospect area.

The provision of the Confidentiality Agreement at issue here reads:

> In order to protect CLK's proprietary interest in the Evaluation Material disclosed pursuant to this agreement, if Recipient acquires (a) an interest in the Properties, or (b) a right to acquire an interest in the Properties, then Recipient agrees to assign to CLK, or its designees, a 3.125% of 8/8ths overriding royalty interest which shall be reduced proportionate to the interest actually acquired but shall not be reduced by subsequent backin or election made by a Farmor if applicable.

The Confidentiality Agreement did not set forth the form of the assignment or any specific terms the assignment would include.

Lac Blanc is subject to special rules for bidding on state leases. Act 92 of 1942 provides that the lessee of a mineral lease over Lac Blanc must also execute a lease over the same acreage from adjacent landowners and that the royalties paid under that lease cannot "encroach upon or reduce the royalties to be paid to the State of Louisiana." The notice of the lease sale provided "Lessee must agree to enter into a lease with Energy Development Corp. and Avrico, Inc. for one-half (½) the amount (bonus, rental and royalty)" offered in the bid submitted to the Mineral Board. The notice also included a copy of a letter from these two parties which stated they would "grant to the State's lessee an oil, gas and mineral lease for a consideration equal to fifty percent (50%) of the amount to be paid to the State in cash payment money,

2

rentals and royalties, and in accordance with the provisions of the said Act No. 92 of 1942."

On December 9, 1992, Nexen attended the Mineral Board's lease sale and bid on the Lac Blanc lease. On December 14, 1992, the Mineral Board and Nexen entered into State Lease 14367, which covers a 600-acre portion of the prospect area identified in the Confidentiality Agreement. Nexen submitted a winning bid, but the terms of the bid rendered drilling on the lease economically unfeasible.

CLK representatives attending the December 4, 1992 meeting with Nexen's representatives testified that Nexen's representatives were informed of the special rules regarding bidding on Lac Blanc leases and were advised to contact a particular Louisiana oil and gas attorney who is familiar with the rules. Apparently, Nexen's representatives ignored this advice. Nexen representatives admitted that CLK was not at fault and did not contribute to the error.

Nexen began negotiating with the Mineral Board to correct its error. Pursuant to the Mineral Board's rules, it sought to replace Lease 14367 with an operating agreement. As a result of Nexen's negotiations, the State and Nexen released State Lease 14367, and based on that release, the State entered into Operating Agreement A0206 with Nexen on October 13, 1993. Operating Agreement A0206 included the property covered by State Lease 14367 and two small additional, adjacent tracts which were also located within CLK's Lac Blanc prospect. The consideration for Operating Agreement A0206 was the $110,000.00 bonus Nexen paid for Lease 14367 and an additional $35,268.00. Thereafter, Operating Agreement A0206 was amended on May 11, 1994, at the request of Nexen to include two additional tracts; the stated

consideration for the amendment was the previous payments made by Nexen and an additional $1,600.00.

Then, on October 5, 1994, Nexen released Operating Agreement A0206 and entered into a new operating agreement, Operating Agreement A0217, with the State to incorporate within one operating agreement the tracts identified in State Lease 14367 and Operating Agreement A0206 and an additional tract Nexen leased from the State on March 14, 1994. The stated consideration for this new operating agreement was the "bonus originally paid for State Lease 14367, Operating Agreement A0206 and State Lease No. 14653" and an additional $80,544.00.

Nexen and CLK stipulated that Nexen was obligated to assign to CLK or its designees overriding royalties as to State Lease 14367 and also as to State Operating Agreement A0206 because both were acquired within one year of the Confidentiality Agreement. However, they specifically did not stipulate that the assignment would have contained a "renewal or extension clause."

Richard Heck, attorney advisor to the Mineral Board, testified that in his experience, the Mineral Board staff would not have recommended that the Mineral Board enter into an operating agreement with Nexen and that more likely than not, the Mineral Board would not have granted an operating agreement, if Nexen had not first obtained State Lease 14367. He explained that Nexen was the only party that could have negotiated and been awarded Operating Agreement A0206 and that it was able to do so only because it already had State Lease 14367. Mr. Heck testified that the release of Operating Agreement A0206 was part of an understanding between the Mineral Board and Nexen which resulted in another operating agreement, Operating Agreement A0217, being executed on October 12, 1994. He also testified that the

4

Mineral Board staff would not have recommended that the Mineral Board enter into Operating Agreement A0217 if Nexen had not originally had Lease 14367 and Operating Agreement A0206 and that Nexen was the only entity that could have released State Lease 14367 and Operating Agreement A0206.

Nexen did not assign to CLK the overriding royalty provided for in the Confidentiality Agreement within the one-year term of the agreement. The evidence established that Nexen requested and CLK provided additional information regarding the Lac Blanc prospect through March 1995. E.D. "Digger" Gray, former executive vice-president of Nexen, testified that CLK and Nexen always cooperated with each other, explaining "we had a common cause." The evidence also established that Nexen disseminated a brochure at an oil and gas trade show in February 1995, which stated that CLK had a 3.125% overriding royalty interest in its Lac Blanc project.

In 1995, Nexen sold 75% of its interest in the Lac Blanc prospect to Mobil Corporation, now ExxonMobil, and in December 1995, Nexen and ExxonMobil drilled a successful well pursuant to Operating Agreement A0217. Gas production commenced in February 1996, and production has exceeded $30 million.

By letter dated January 2, 1996, CLK directed Nexen to assign the overriding royalty to individuals identified therein. Nexen forwarded the letter to ExxonMobil. Counsel for ExxonMobil opined that Nexen was not obligated to assign the overriding royalty to CLK because an assignment was not made within the one-year term of the Confidentiality Agreement, Nexen released State Lease 14367 and Operating Agreement A0206 which were confected during the one-year term of the Confidentiality Agreement, and the Confidentiality Agreement did not contain an "extension or renewal" clause. Thereafter, Nexen refused to assign the overriding

5

royalty as requested by CLK for the reasons stated by ExxonMobil's counsel, and CLK instituted suit for specific performance, payment of royalties, interest, costs, expenses, including attorney's fees, and double damages as provided in La.R.S. 31:212.23(c).

CLK directed another letter to Nexen in November 1996, acknowledging receipt of and disagreement with the opinion letter of ExxonMobil's counsel. The letter notified Nexen that because CLK's contract was with Nexen not ExxonMobil, it wanted a formal response from Nexen to its request for the assignment provided for in the Confidentiality Agreement.

A lengthy jury trial was held in May 2006. At the conclusion of CLK's case, Nexen moved for a directed verdict. The motion was denied by the trial court. After completion of the trial, the jury returned a verdict in favor of CLK on all except one of its claims, and the trial court rendered judgment pursuant to the verdict, awarding CLK $974,766.60 in past production, legal interest, attorney's fees, expenses, and court costs. The judgment provided that it constituted a "conveyance" of the overriding royalty provided for in the Confidentiality Agreement and, as provided in the jury's verdict, that CLK's claims under La.R.S. 31:212.23(c) were dismissed. Nexen and CLK filed motions for judgment notwithstanding the verdict and for new trial which the trial court denied.

After a subsequent hearing to determine attorney's fees, expenses, and court costs, the trial court rendered another judgment in favor of CLK. Nexen then filed this appeal. CLK answered the appeal, seeking additional relief.

### Assignments of Error

Nexen asserts that the trial court erred in a number of respects. In summary, it claims: 1) the trial court erred in finding the Confidentiality Agreement was ambiguous and allowing CLK to introduce extrinsic evidence to establish the parties' intent that an assignment contemplated by the Confidentiality Agreement would include an "extension and renewal" clause; 2) the trial court erred in failing to grant its exception of failure of joinder and no right and no cause of action and motions for directed verdict, judgment notwithstanding the verdict, and new trial; 3) the trial court erred in instructing the jury that correspondence sent by CLK to Nexen could be considered written notice as provided in La.R.S. 31:212.21; and 4) the jury erred in finding that the correspondence satisfied the requirements of La.R.S. 31:212.23(c) and that Nexen failed to timely pay royalties in response to a proper demand.

CLK answered Nexen's appeal and assigns as error the trial court's dismissal of its claim for statutory double-damages under Mineral Code article 212.23(c) and denial of its motion for JNOV or alternatively new trial. It also urges that it is entitled to additional attorney's fees, costs, and interest on those awards.

### Discussion

#### Nexen's Claims

The trial court determined that the Confidentiality Agreement was ambiguous and, over objection by Nexen, allowed CLK to present extrinsic evidence regarding whether the parties intended an assignment made pursuant to the Confidentiality Agreement to include an extension and renewal clause. It instructed the jury that it could consider documentary and testimonial evidence to determine whether the parties intended that any assignment made pursuant to the Confidentiality Agreement

7

would include an extension and renewal clause. Nexen urges that the trial court erred in finding that the Confidentiality Agreement is ambiguous and allowing the jury to consider extrinsic evidence to render its verdict.

Initially, CLK urges that we should not consider Nexen's argument concerning parol evidence because it made the same arguments in an application for supervisory writs which was denied by this court. *CLK Co., Inc. v. CXY Energy, Inc.*, an unpublished writ opinion bearing docket number 04-1561 (La.App. 3 Cir. 3/2/06). However, as noted by Nexen, denial of supervisory writs does not bar reconsideration of issues argued in the writ application on appeal. *Levine v. First Nat. Bank of Commerce*, 06-394, 06-439 (La. 12/15/06), 948 So.2d 1051.

### *Ambiguity/Extrinsic Evidence*

Nexen strenuously argues that the trial court erred in finding that the Confidentiality Agreement was ambiguous and allowing CLK to present parol evidence regarding the form of the assignment the parties intended to assign CLK's overriding royalty. It further argues that any ambiguity in the Confidentiality Agreement must be construed against CLK because it drafted the agreement.

Whether a contract is ambiguous is a question of law. *Sims v. Mulhearn Funeral Home, Inc.*, 07-54 (La. 5/22/07), 956 So.2d 583. Appellate review of a question of law simply requires the appellate court to determine whether the trial court's conclusion was correct. *St. Mary Operating Co. v. Guidry*, 06-1495 (La.App. 3 Cir. 4/4/07), 954 So.2d 397, *writ denied*, 07-962 (La. 6/29/07).

The goal of contract interpretation is to determine "the common intent of the parties." La.Civ.Code art. 2045. The intent of the parties to a contract must be determined in accordance with "the plain, ordinary, and popular sense of the language

8

used in the agreement and by giving consideration on a practical basis to the instrument in its entirety." *Fleniken v. Entergy Corp.*, 99-3023, 99-3024, p. 6 (La.App. 1 Cir. 2/16/01), 790 So.2d 64, 68, *writs denied*, 01-1269, 01-1295 (La. 6/15/01), 793 So.2d 1250, 1252. When the words of a contract are clear, explicit, and lead to no absurd consequences, the contract must be interpreted within its four corners and cannot be explained or contradicted by parol evidence. La.Civ.Code art. 1848; *Peterson v. Schimek*, 98-1712 (La. 3/2/99), 729 So.2d 1024. However, when a word in a contract is not clear, testimony or other evidence may be considered to determine the parties' intent and interpret the contract. *Blackburn v. Nat'l Fire Ins. Co. of Pittsburgh*, 00-2668 (La. 4/3/01), 784 So.2d 637. Contrary to Nexen's arguments, this rule applies to contracts involving immovable property. *See, e.g., Henry v. Ballard & Cordell Corp.*, 418 So.2d 1334 (La.1982) (which involved the payment of royalties under mineral leases); *Blanchard v. Pan-OK Prod. Co., Inc.*, 32,764 (La.App. 2 Cir. 4/5/00), 755 So.2d 376, *writ denied*, 00-1297 (La. 6/23/00), 765 So.2d 1043 (which involved the determination of the meaning of "completed" in an oil and gas lease); and *Noel v. Discus Oil Corp.*, 30,561 (La.App. 2 Cir. 5/13/98), 714 So.2d 105 (which involved the interpretation of whether an oil and gas lease restricted the lessee's interest to one mineral).

"The words of a contract must be given their generally prevailing meaning," and "[w]ords of art and technical terms must be given their technical meaning when the contract involves a technical matter." La.Civ.Code art. 2047. Additionally, "[w]ords susceptible of different meanings must be interpreted as having the meaning that conforms to the object of the contract." La.Civ.Code art. 2048. Pursuant to La.Civ.Code art. 2049, a "provision susceptible of different meanings must be

9

interpreted with a meaning that renders it effective and not with one that renders it ineffective."

In *Sloane v. Davis*, 619 So.2d 585 (La.App. 3 Cir.), *writ denied*, 629 So.2d 355 (La.1993), this court held that inclusion of the term "prospect" in an employment contract without explanation of its meaning rendered the contract ambiguous as to the parties' intent regarding the plaintiff's royalty interest in a particular lease and that the trial court erred in refusing to allow the parties to introduce parol evidence to explain the ambiguity. The court explained:

> When it is impossible to gather the intention of the parties from a written contract, the court should permit introduction of extrinsic evidence. As a general rule parol evidence is admissible, as between the parties, to explain ambiguous terms of descriptive meaning found in contracts. The intention of the parties must be ascertained; and when that intention cannot be determined without an explanation of the situation and nature of the thing conveyed in the contract, courts are free to examine the parties' prior use of such terms or dealings on the same subject matter, the meaning generally afforded such terms when both are used in the same instrument, and other special facts peculiar to the oil and gas industry which may be helpful in arriving at the parties' true intent in so wording the agreement.

*Id.* at 590.

In *Blanchard*, 755 So.2d 376, the second circuit reached the same conclusion, finding that a mineral lease was ambiguous because the word "completed" was not defined and was subject to more than one meaning. The court explained that:

> A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on that issue or when the language used in the contract is uncertain or is fairly susceptible to more than one interpretation. These rules are applicable even to contracts involving rights in immovable property, such as mineral rights.

*Id.* at 381 (citations omitted).

The Confidentiality Agreement does not define the word "assign" or detail the terms an assignment contemplated by the agreement would contain. Accordingly, we

find no error with the trial court's conclusion that the Confidentiality Agreement was ambiguous and that CLK could introduce extrinsic evidence to establish the parties' intent on that issue.

Nexen argues that the supreme court's decision in *Wier v. Glassell*, 216 La. 828, 44 So.2d 882 (1950), requires a different conclusion. In *Wier*, the plaintiff subleased various mineral leases he had taken on certain properties to the defendant. Near the expiration of the leases, the defendant obtained new leases from the landowners and allowed the original leases which plaintiff subleased to him to expire. The plaintiff filed suit and claimed that the defendant owed him royalties on the new leases. The supreme court concluded that the overriding royalty reserved in the lease assignment expired when the original leases expired because the assignment did not provide that it applied to renewals of the leases. The court specifically held that parol evidence was not admissible to substantiate the plaintiff's claim that he and the defendant intended for his overriding royalty to attach to any future leases.

The plaintiff in *Wier* sought to vary the clear language of the subleases which is not allowed by La.Civ.Code art. 1848. Article 1848 prohibits the introduction of extrinsic evidence to "negate or vary" the terms of a written contract. Here, CLK does not claim that the Confidentiality Agreement transferred title to an overriding royalty to it, and the clear language of the agreement establishes that it does not purport to transfer title to an overriding royalty. Rather, CLK sought to introduce extrinsic evidence to establish the parties' intent regarding the term "assign."

Now, we address the parties' intent regarding the term "assign." The jury's determination of the intent of the parties is reviewed under a manifest error standard. *Noel*, 714 So.2d 105. The evidence established that in the oil and gas industry the

11

assignor, in this case Nexen, prepares the assignments and that they customarily include extension or renewal clauses. Janice Bowden, a lease analyst for Nexen, testified that it is her responsibility to prepare assignments for Nexen, that Nexen's customary form of assignment included an extension or renewal clause, that her superior instructed her to prepare an assignment in favor of CLK in June 1996, and that she prepared the customary assignment form which included an extension or renewal clause.

Nexen argues that the trial court's allowance of the assignment form, which was prepared long after the confection of the contract, was erroneous. If only the form had been introduced, this argument might have merit; however, the form merely corroborated Ms. Bowden's testimony and the testimony of other witnesses that it is customary in the oil and gas industry for royalty assignments to include extension and renewal clauses, and that Nexen follows this practice.

Nexen next urges that La.Civ.Code art. 2056 mandates that any ambiguity in the Confidentiality Agreement must be interpreted against CLK because CLK prepared it. Article 2056 (emphasis added) provides:

> *In case of doubt that cannot be otherwise resolved*, a provision in a contract must be interpreted against the party who furnished its text.

> A contract executed in a standard form of one party must be interpreted, *in case of doubt*, in favor of the other party.

In *Sims*, 956 So.2d at 589-90 (emphasis added), the supreme court addressed the interplay between Article 2056 and the general rules of interpretation which precede it in the Civil Code, explaining: *"if, after applying the general rules of contractual interpretation . . .* an ambiguity remains, the ambiguous contractual provision is generally construed against the [drafter]." However, the court clarified

that this rule of strict construction applies only when a contract is "susceptible to two or more interpretations [and] each of the alternative interpretations [is] reasonable." *Id*. While the Confidentiality Agreement may have been a form regularly used by CLK, we do not believe it is a "standard form" contemplated by Article 2056, as Nexen was allowed to negotiate changes to it.

As previously stated, we find no error with the trial court's conclusion that the Confidentiality Agreement was ambiguous and that CLK could introduce extrinsic evidence to establish the parties' intent on that issue. After applying the general rules of contractual interpretation, we also find that the evidence established that, pursuant to industry custom, any assignment of an overriding royalty interest would have included an extension or renewal clause. Consequently, we find no error with the trial court's jury instructions on these issues or the jury's determination that CLK was entitled to an assignment of 3.25% of 8/8ths interest in State Lease 14637 and Operating Agreement A0206 and that the assignment applied to any and all extensions and renewals of the lease and/or operating agreement. For these reasons, we also find no error with the trial court's denial of Nexen's motion for directed verdict.

Nexen argues that the consideration stated in the Confidentiality Agreement is its obligation to keep the proprietary information CLK shared with it confidential and that the assignment contemplated by the agreement is a penalty; therefore, the Confidentiality Agreement must be strictly construed. This argument is completely without merit and unworthy of discussion.

13

### *Joinder of CLK Employees*

The Confidentiality Agreement provides that Nexen "agrees to assign to CLK, or its designees a 3.125% of 8/8ths overriding royalty interest." Nexen contends that the persons CLK designated as assignees in its January 1996 letter were required to be named parties to this litigation. This argument is without merit.

Article 641 of the Code of Civil Procedure provides in pertinent part that "[a] person shall be joined as a party in the action when . . . (1) [i]n his absence complete relief cannot be accorded among those already parties," and La.Code Civ.P. art. 698 provides that judicial enforcement of an incorporeal right, which has been assigned, must be by "[t]he assignor and the assignee, when the assignment is partial."

An overriding royalty is an incorporeal immovable, La.R.S. 31:18, and transfer must be by made authentic act or by act under private signature. La.Civ.Code art. 1839. The January 2, 1996 letter does not satisfy this requirement. Furthermore, the persons identified in the January 2, 1996 letter were entitled to the designated interests as employees or former employees of CLK pursuant to the partnership agreement among the CLK partners. There is no evidence that CLK assigned any of its interests to those persons. Additionally, the persons designated for inclusion in the assignment by Nexen were not parties to the Confidentiality Agreement and were not identified in the Agreement as assignees.

The designation was internal to CLK; there was no assignment to the named persons. Accordingly, the trial court did not err in denying Nexen's exception to join those persons in this litigation.

For these same reasons, we find no merit in Nexen's argument that the trial court erred in denying its exception of no right of action. The peremptory exception

of no right of action is a threshold device which terminates suits brought by one who has no interest in enforcing the right. La.Code Civ.P. art. 927; *Goulas v. Denbury Mgmt., Inc.*, 00-935 (La.App. 3 Cir. 12/6/00), 774 So.2d 346. To prevail on this exception, a defendant must establish that the plaintiff "does not have an interest in the subject matter of the suit or the legal capacity to proceed with the suit." *Id.* at 348.

### *Double Damages*

Nexen assigns as error the trial court's decision to allow the jury to consider CLK's January 2, 1996 and November 22, 1996 letters as proper demand for payment of royalties under La.R.S. 31:212.21, while CLK argues that the letters provided adequate demand under this provision and that it is entitled to double damages.

A royalty owner must give a mineral lessee written notice of his failure to "make timely or proper payment of royalties . . . as a prerequisite to a judicial demand for damages." La.R.S. 31:212.21. If the mineral lessee fails "to pay and fails to state a reasonable cause for failure to pay in response to the notice" within thirty days of receipt of the notice, a court "may" award the royalty owner double damages. La.R.S. 31:212.23(C). Initially, we observe that Section 212.23's use of "may" means that even if CLK's letters constitute written notice under these provisions, an award of double damages is not mandatory.

Nexen urges that CLK's January 2, 1996 letter does not satisfy the requirements of this provision nor does its November 22, 1996 letter. We agree.

The Mineral Code establishes a duty for the mineral lessee to pay royalties. Only one case involving La.R.S. 31:212.21-23 has been reported, but it is inapplicable here. Accordingly, we have considered jurisprudence under La.R.S.

15

31:137, which addresses the notice a mineral lessor must give its lessee before filing suit for royalties. In *Lewis v. Texaco Exploration & Production Co., Inc.*, 96-1458, pp. 11-12 (La.App. 1 Cir. 7/30/97), 698 So.2d 1001, 1010, the court addressed the mineral lessee's duty under La.R.S. 31:137, explaining that a demand for payment "must be something more than the mere recitation of the lessee's contractual and statutory duty to pay royalties" and that "the notice [must] be of a more specific nature, so as to reasonably alert the lessee and to allow for an appropriate investigation of the problem by the lessee."

CLK's January 2, 1996 letter requested an assignment of an overriding royalty; it did not make a demand for the payment of royalties or notify Nexen of a problem or deficiency with the payment of royalties. Further, no royalties were due when the letter was sent, as there was no production from Nexen's Lac Blanc well until more than a month after CLK's letter, and, as admitted by the author of the letter, royalties would not have been due to CLK until March or April of 1996.

The November 11, 1996 letter does no more than the January 2, 1996 letter. It notifies Nexen that CLK considers Nexen, not ExxonMobil, obligated to assign the overriding royalty and requests a response to its claim. It does not notify Nexen of its failure to pay royalties.

CLK's letters are similar to letters the plaintiffs in *Rebstock v. Birthright Oil & Gas Co.*, 406 So.2d 636 (La.App. 1 Cir.), *writ denied*, 407 So.2d 742 (La.1981), sent to their lessee in that they request something other than royalties. In *Rebstock*, the plaintiffs' letters, which demanded cancellation of leases, were found insufficient to trigger the provisions of La.R.S. 31:137-38. CLK's letters instruct Nexen

16

regarding preparation of the assignment and informs Nexen that it, not its partner, is obligated to make the assignment.

For these reasons, the trial court's instruction to the jury that CLK's letters could be considered as notice to make timely or proper payment of overriding royalties required by La.R.S. 31:212.23 was error, and CLK's claim on appeal that it is entitled to double damages pursuant to this provision is without merit.

### Form of Judgment

Nexen asserts that the trial court erred in signing a judgment which assigned the disputed override to CLK. It contends that the judgment should have ordered it to assign the override to the individuals named in CLK's January 2, 1996 letter.

Article 1988 of the Civil Code provides that "[a] failure to perform an obligation to execute an instrument gives the obligee the right to a judgment that shall stand for the act." The comments to this article explain that it applies "not only to the sale of immovable property but to any juridical act that creates an obligation to execute an instrument." The trial court did not err in granting CLK a judgment which conveyed to it the overriding royalty provided for in the Confidentiality Agreement.

### Attorney's Fees

The Confidentiality Agreement provides that CLK is entitled to costs and expenses, including reasonable attorney's fees, if Nexen breached the agreement. The trial court awarded CLK $502,000.00 in attorney's fees; CLK seeks an award of $20,000.00 for attorney's fees and $300.00 in costs for work done on this appeal.

We have considered the factors enumerated in *State, Department of Transportation & Development v. Williamson*, 597 So.2d 439, (La.1992), for determining reasonable attorney's fees and find CLK's request reasonable as counsel

17

has successfully protected a judgment in excess of $1.5 million, counsel's work has been exemplary and reveals that its legal knowledge and skill are extensive and that its preparation of the appeal has been significant and required much ability, diligence, and attention to detail. Furthermore, we note that CLK's contingency fee contract with its counsel is a relevant factor to be considered in awarding attorney's fees. *Rivet v. State, Dep't of Transp. & Dev.*, 01-961 (La. 11/28/01), 800 So.2d 777 (citing *Moody v. Arabie*, 498 So.2d 1081 (La.1986). We award $20,000.00 in attorney's fees and $300.00 in costs to CLK for work on this appeal.

### *Interest on Attorney's Fees*

CLK's second assignment of error is that the trial court erred in denying its request for interest on its award of attorney's fees. The award of attorney's fees is provided for in the Confidentiality Agreement. Citing *Sharbono v. Steve Lang & Son Loggers*, 97-110 (La. 7/1/97), 696 So.2d 1382, Nexen argues that attorney's fees are in the nature of a penalty and should not bear interest. CLK argues post-judgment interest is appropriate on an award of attorney's fees.

*Sharbono* held that under the workers' compensation laws attorney's fees are penal in nature and that prejudgment interest does not accrue on an award of attorney's fees made pursuant to La.R.S. 23:1201.3 because such an award is "a discretionary finding of the trier of fact." *Id.* at 1388. However, post-judgment interest is due from the date of the judgment awarding attorney's fees and accrues until the fees are paid. *Id.* Accordingly, the trial court erred in refusing to provide in its judgment that interest accrues on the attorney's fees awarded CLK from the date of judgment until paid.

18

Nexen argues that awarding post-judgment interest constitutes fee splitting by attorneys with their clients which is prohibited by Louisiana Rules of Professional Conduct.  This argument is without merit.  The award is to the client not the attorney.  The client is legally entitled to the awards and may use the fee *and interest* to satisfy its contractual obligation to its attorney.

### *Disposition*

The judgment of the trial court is amended to provide that interest accrues on the attorney's fees awarded therein from the date of judgment until paid and is affirmed in all other respects.  Attorney's fees in the amount of $20,000.00 and costs in the amount of $300.00, together with interest thereon from the date of this judgment, are awarded to CLK for work performed on this appeal.  All court costs are assessed to Nexen.

**AMENDED IN PART; AFFIRMED IN PART; AND RENDERED.**