WELCH, J.
|/The defendants/appellants, Shelia Richard Breaux, Angela Richard White, Ernie Richard, Jr., Travis Richard, Rene J. Durocher, Leo Durocher, Anita Maxwell Gonzales, and Laurie M. Bergeron, appeal a trial court judgment granting summary judgment in favor of the plaintiffs, Glassell Producing Company, Inc., Clare Attwell Glassell, widow of Alfred C. Glassell, Jr., Alfred C. Glassell, III, as trustee under the last will and testament of Alfred C. Glassell, Jr., and Woodrow A. Holland and John M. Robb, as co-trustees of the Alfred C. Glassell, Jr. Children’s Trust for Jean Curry Glassell under the Last Will and Testament of Alfred C. Glassell, Jr.[1] For *58 reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
The instant appeal arises out of a con-cursus action involving a dispute over royalty payments due under a mineral lease. Junius A. Naquin, Carol Naquin Bou-dreaux, and Dolores Naquin Richard Durocher, were siblings, and each inherited an undivided one-third (1/3) interest ⅛ their father’s one-sixteenth (1/16) interest in and to the following property:
That certain tract or parcel of land containing thirty-one (31) acres, more or' less, being situated in the West Half of the East Half of the Southeast Quarter (W/2 of E/2 of SE/4) of Section 57, Township 15 South, Range 15 East, La-fourche Parish, Louisiana, being bounded Rnow or formerly as follows: North by Dewey Adams, East by the heirs of Joseph A. Adams, South by Lyric Realty & Parking Company and West by Joseph V. Roger, et al, and being the same lands acquired by virtue of that deed dated March 18, 1902, recorded under the COB 37, Page 694, Records of La-fourche Parish, Louisiana, executed by Cletus Adam in favor of Garciena Adam Naquin, wife of Octave Naquin.[2] (“property”)
The history of the property reveals that in 1947, the siblings’ ancestor-in-title granted a mineral lease covering the one-sixteenth (1/16) property interest to S.P. Benckenstein (“1947 - lease”). The 1947 lease ■ provided for a one-eighth (1/8) reserved landowner’s royalty. Production under the 1947 lease commenced shortly thereafter from the ROB 2 RE SUA; C.J. Caulori No, 6 Well. '
The 1947 lease was in effect when Carol, Junius, and Dolores inherited their interests in the property. Thus, they each acquired titie to the property subject to the mineral lease that granted each sibling a orie-third (1/3) interest in one-sixteenth (1/16) of the property subject to a one-eighth (1/8) royalty under the 1947 lease. Expressed in decimal form, • each party *59 acquired a one-third '(1/3) interest in a .00781255 royalty interest under the 1947 lease.
In August and October of 1993, while the 1947 lease was still in effect, Junius and Dolores each entered into an act of cash sale (“deed”) with Carol wherein each conveyed to Carol a royalty interest. Both deeds contain identical descriptions of the object being conveyed, to wit:
ALL OF SELLER’S right, title and interest consisting, of an undivided one third in a .00781255.mineral royalty interest in and to the following described property
A certain tract or parcel of land containing 26.34 acres[3], being in the W/2 of the E/2 of Section 57, T 15 S, R 15 E; being bounded as | .(follows: North by land of Dewey Adams now or formerly, East by Heirs of Joseph Adams now or formerly, South by Lyric Realty and Parking Company now or formerly, West by Roger heirs now or formerly, (“the deed”)
The 1947 lease remained in production until 1998; however, in April of 1998 the holders of the 1947 lease filed a release and surrender of the lease in the conveyance records. On May 15, 1998, Carol entered into a new mineral lease with Alfred C. Glassell, Jr. affecting a portion of the subject property (“1998 lease”). Under the terms of the 1998 lease, Carol received a one-sixth (1/6) royalty interest as part of the consideration for the lease. Alfred J. Glassell, Jr. did not seek or obtain a lease from Dolores or Junius. Production under the 1998 lease commenced in 1999 from the Mire RD SUA; J.V. Rogers, et al, No. 2 Well, said well remains in production to date.
On February 5, 2015, a petition for con-cursus was filed by .the then-holder of the 1998 lease, Legacy Trust Company, N.A. and the operator of the well, Glassell Producing Company, Inc. (collectively referred to herein as “plaintiffs”). The petition named as defendants:' Junius, Carol, and the heirs of Dolores, who are the appellants herein. The plaintiffs asserted that the defendants had conflicting claims to sums accruing from production under the 1998 lease. The petition asserted that Carol took the position that the 1993 deeds conveyed all of Junius and Dolores’ undivided right, title, and interest in the property. As to Junius and heirs of Dolores, the petition claimed that they asserted an undivided two-thirds (2/3) interest in and to the undivided interest in production, less any mineral royalties that may have been conveyed by the 1993 deeds. The plaintiffs sought to deposit the following sums in the court registry pending resolution of the matter:
[A]ll sums accruing to the interest in production of oil and gas from the Subject Lands as claimed by Junius A. Na-quin and...[the] heirs of Dolores Na-quin Richard Durocher, which have now accrued, less the cost of drilling, completing and operating the...unit well, and those net sums which will accrue from time to time in the future...
Un February of 2015, the defendants deposited $397,059.29 into the court registry.
Carol answered the plaintiffs’ petition and asserted that Junius and Dolores intended to sell and did sell all of their mineral royalty interest in the property by virtue of the October 1993 deeds and, further, that the “reference to a ‘.00781255’ mineral royalty interest was merely a typographical error” made by the notary who drafted the deeds between her and her siblings.
*60 On April 27, 2015, the plaintiffs filed a motion to limit the time to file an answer under La. C.C.P. art. 4657. On May 6, 2015, the trial court ordered all defendants to file an answer ten days from publication of notice of the order. The heirs of Dolores timely filed their answer; however, Junius failed to file his answer within the delays set forth by the trial court. Following a contradictory hearing, the trial court issued a judgment dated October 26, 2015, setting aside and striking the answer of Junius and finding that Junius was precluded from asserting a claim in this matter against the plaintiffs. Junius did not seek appellate review of this ruling.
On November 24, 2015, the plaintiffs filed a motion for summary judgment against the heirs of Dolores.[4] The plaintiffs asserted that Dolores transferred to Carol all of her right, title, and interest in and to the royalties under the property by the 1998 deed, thus, her heirs had no claim to the production proceeds deposited into the registry of the court. According to the plaintiffs, because Dolores placed no limitation on the royalty interest conveyed, the 1993 deed had the effect of creating a mineral royalty interest under La. R.S. 31:80, which is a real right subject to ten years prescription from the date of last production. See La. R.S. | fi31:85. Thus, the plaintiffs maintain that Carol has the right to all of Dolores’ royalty interest as long as the subject land remains under production without a lapse of ten years.
The plaintiffs supported their motion for summary judgment with copies of the 1947 lease, the 1998 lease, the 1993 deeds from Junius and Dolores to Carol, the affidavit of landman, David Deville, and the affidavit of Carol. In her affidavit, Carol attested that Junius and Dolores intended to transfer to her all of their right, title, and, interest in and to all royalties then due and thereafter due in an effort to divest themselves of income so as to qualify for governmental assistance. Carol filed a separate motion for summary judgment and adopted the plaintiffs’ arguments.
The heirs of Dolores countered the motion for summary judgment asserting that the deed only transferred Dolores’ one-eighth (1/8) retained royalty interest in the 1947 lease. The heirs of Dolores noted that the language is limited to the royalty percentage contained in the 1947 lease of one-eighth (1/8) and does not purport to convey any future royalty interests.
The heirs of Dolores also attached affidavits of two of Dolores’ daughters and Junius to counter the assertions contained in Carol’s affidavit. The daughters’ affidavits attested that their mother only intended to transfer her interest in the small royalty payments she was receiving at that time from the 1947 lease. Similarly, Junius attested that it was not his intention to transfer anything to Carol other than his royalty interests he was receiving from 1947 lease. Junius also attested that the deeds were drafted by an attorney hired by Carol.
Finally, the heirs of Dolores stressed that Carol had no authority to lease their interests in the property. Carol was never conveyed any type of mineral interest by Junius or Dolores; thus, Junius and the heirs of Dolores remain un-leased owners of the minerals.
*61 |7Following a hearing, in a judgment signed on March 3, 2016, the trial court granted the plaintiffs’ motion for summary judgment and dismissed “any claim of said Defendants as to the proceeds of production from the Mire RD SUA; J.V. Rogers, et al, No. 2 Well deposited in the registry of the court or which may accrue hereafter.” In its oral reasons for judgment, the trial court explained why it found no factual or legal issues precluding judgment in favor of the plaintiffs:
Glassell Producing and Carol Naquin Boudreaux assert that the interests— the entire mineral interest that was owned by Dolores and Richard Durocher and Junius Naquin II were transferred by acts of the conveyance entitled “Cash Sale”.. .wherein they each—according to the movers—transferred their entire one-third (1/3) interest of what they had in mineral royalties at the time.
There’s no reference to the Bencken-stein lease [1947 lease] in the sale. There’s no reference any other lease in this sale. Prior to the acts of the cash sale, they were receiving their one-third (1/3) interests. After the sale, they ceased receiving their interests. The sales accomplished what they intended to do, which was to relieve themselves of the financial royalties, so that they could qualify for whatever governmental qualification they were trying to attain. None of that is in dispute.
The argument now, is that the terminology used in the acts of the cash sale where the- seller conveyed all of their right, title, and interest was really—I guess the argument is, “Well, they only intended to sell one-third (1/3) of the .0078 and they intended to keep two-thirds (2/3) of the .0078.” That flies in the face of the facts that occurred at the time of the sale and the facts that occurred after the sale, which resulted in zero apportionment.
I don’t think that there’s any dispute that these acts of sale transferred their interests—the interest of Junius II or the interest of Dolores Naquin to Carol. They’re not—those transfers of the interests were not somehow revived just because the Beckenstein lease went out of existence. Those • interest were already sold. They’re not revived. The fact that they moved on to a new provider or payor, Glassell, doesn’t bring them back into this mineral interests.
The heirs of Dolores have appealed and assert two assignments of error. First, they contend that the trial court erred in failing to find that the 1993 deed conveyed only Dolores’ royalty interest under the 1947 lease. Second, the heirs of Dolores assert that in awarding Carol all future production revenues from the Mire RD SUA; J.V. Rogers, et al, No. 2 Well, the trial court’s judgment went beyond |sthe relief requested by the plaintiffs, and fails to recognize the existence of their mineral rights as un-leased mineral owners.
LAW AND DISCUSSION
Summary Judgment
An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. In re Succession of Beard, 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-760. The determination of whether a contract is clear or ambiguous is a question of law. Sims v. Mulhearn Funeral Home, Inc., 2007-0054 (La. 5/22/07), 956 So.2d 583, 590. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter *62 of law and summary judgment is appropriate. Id. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for purposes of summary judgment can be seen only in light of the substantive law applicable to the case. Gaspard v. Graves, 2005-1042 (La. App. 1st Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 2006-0882, 20060958 (La. 6/16/06), 929 So.2d 1286, 1289.
Mineral Royalty
Louisiana Revised Statutes 31:16 provides as follows regarding the creation mineral rights by a landowner:
The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. This enumeration does not exclude the creation of other mineral rights by a landowner. Mineral rights are real rights and are subject either to. the prescription of nonuse for ten years or to special rules of law governing the term of their existence.
Mineral rights are incorporeal immovable property. La. R.S. 31:18. A mineral servitude is the right of enjoyment of land belonging to another for the 1 ^purpose of exploring for and producing minerals and reducing them to possession and ownership. La. R.S. 31:21. A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals. La. R.S. 31:114. A mineral royalty is “the right to participate in production of minerals from land owned by another or land subject to a mineral servitude owned by another.” La. R.S. 31:80; see also La. R.S. 31:213(5). A landowner owns all of these rights and may dismember them in any manner that is not contrary to law. See La. C.C. arts. 476 and 477; Eagle Pipe & Supply, Inc. v. Amerada Hess Corp., 2010-2267 (La. 10/25/11), 79 So.3d 246, 258.
The owner of a royalty has no executive rights, nor any rights to explore for or produce minerals. La. R.S. 31:81. A mineral royalty may be created either by a landowner who owns mineral rights or by the owner of a mineral servitude. La. R.S. 31:82. In the seminal case, Vincent v. Bullock, 192 La. 1, 16, 187 So. 35, 40 (1939), the supreme court recognized that “the legal nature of the royalty must be grounded upon the contract in which it appears.” In other words, “[t]he royalty depends upon the continued existence of the right to which it is an appendage.” Id. at 39. In further explaining the nature of royalty, the supreme court quoted with favor the following:
Royalty in itself cannot be used to designate the fundamental right which is being dealt with but only to indicate the percentage, the price, the rent, the consideration attached to or proceeding out of the right or that may proceed from it during its existence. The royalty depends upon the continued existence of the right to which it is an appendage. It cannot have a life of its own any more than- could interest exist apart from the note or debt to which it is attached. If a party to a contract sells royalty under an existent lease, he is selling a part or the whole of his rent due from the lease upon which his royalty depends. If he sells royalty under an existing servitude, he is selling a part of the proceeds to issue from the use of that servitude and the royalty sale is dependent upon the life and use of the servitude. If a landowner sells royalty he is selling the proceeds that may issue from his right to explore for minerals on his own land, which is an inherent part of his ownership of the land. If a landowner sells his land and the right to explore inherent in the la/nd and reserves royalty, he is 1 mreserving a share in the anticipated *63 production to ■■ result if and when successful exploration ensues upon the land sold in fall ownership;’
Vincent v. Bullock, 187 So. at 39-40, citing. H. Daggett, Mineral Rights in Louisiana § 61 (1949). [Italics emphasis in original.]
Taking these principles into consideration, the supreme court in Vincent found that the reservation of a general future royalty interest by a vendor of immovable property created a real right burdening the property. Id. at 40. However, the supreme court’s analysis turned on the vendor’s right to dismember some property rights, while retaining others, and concluded, based on the language in the transfer document, that the vendor had retained the disputed royalty interest. Id. Thus, the royalty right there was an appendage of the vendor’s property rights and the sale thereof. Nevertheless, in analyzing the nature of royalty interests, the court in Vincent recognized that not all royalty interests create real rights in the property. Notably, the court recognized that “[i]f a party to a contract sells royalty under an existent lease, he is selling a part or the whole of his rent due from the lease .upon which his royalty depends.” Id. at 39-40. Subsequent cases have recognized that a royalty that is an appendage of a lease falls away or ceases to burden the property when the lease terminates. See Wier v. Glassell, 216 La. 828, 836, 44 So.2d 882, 885, 887-888 (1950); Humble Oil & Refining Co. v. Guillory, 212 La. 646, 651, 33 So.2d 182, 184 (1946); Calcasieu Oil Co., Inc., v. Yount-Lee Oil Co. et al., 174 La. 547, 141 So. 55, 56-57. The different ways in which a mineral royalty are extinguished has been codified in La. R.S. 31:85.[5]
Ininterpretation of October 1993 Act of Cash Sale
At issue in the instant matter is whether the royalty interest conveyed by Dolores to Carol created a real right in the property or was an appendage to the 1947 lease that ceased to burden the property once the 1947 lease was terminated. Therefore, the issue herein is one of contract interpretation. The principle of freedom of contract is expressly recognized by the Mineral Code. See La. R.S. 31:3; Prey v. Amoco Production Co., 603 So.2d 166, 172 (La. 1992). In the context of mineral rights, just as in other contexts, contracts are interpreted to determine the intent of the parties. La. C.C. art. 2045; Quality Environmental Processes, Inc. v. I.P. Petroleum Company, Inc., 2013-1582 (La. 5/7/14), 144 So.3d 1011, 1020. Provisions susceptible of different’ meanings must be interpreted with a meaning that renders the provision effective and not ineffective. See-La. C.C. art. 2049. Each provision in • a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
*64 In their first assignment of error, the heirs of Dolores maintain that the trial court erred in failing to find that the 1993 deed conveyed only Dolores’ royalty interest in the 1947 lease. According to the heirs of Dolores, the language of the 1998 deed unambiguously limited the royalty interest sold to the 1947 lease. In support of their position, the heirs of Dolores note that no future royalties are conveyed, the limitation of the language describing what is being conveyed, and the use of the singular when referring to “a .00781255 mineral royalty” versus the term “all royalties,” and the percentage conveyed under the deed is that contained in the 1947 lease.
| iaCiting affidavits of Carol, Junius, and Dolores’ daughters, the heirs of Dolores make the alternative argument that if the October 1993 deed is found to be ambiguous, then the conflicting accounts by Carol, Junius, and Dolores’ daughters regarding the parties’ intent is sufficient to create an issue of material fact precluding a motion for summary judgment. Additionally, they contend that any ambiguity should be construed against Carol, because her attorney drafted the deed.
In contrast, the plaintiffs argue that there is no language in the deed that can be found to support the position that the deed only transferred Dolores’ royalty interests in the 1947 lease, as there is no reference to that lease or any lease in the deed. The plaintiffs maintain that the reference in the 1993 deed indicating that Dolores was conveying her one-third (1/3) interest of “a .00781255” royalty interest does not limit the royalty interest transferred to that decimal equivalent, but merely defines the royalty participation on the date of the deed. Instead, the plaintiffs focus on the phrase “ALL OF SELLER’S right title and interest” as evidence that the parties intended to transfer all of Dolores’ royalty interest in the property. The plaintiffs contend that this situation is governed by La. C.C. art. 2052, which provides that “[w]hen the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that situation alone.”
Mindful that “[t]he legal nature of the royalty must be grounded upon the contract in which it appears,” we find the deed to be a limited conveyance of Dolores’ royalty interest in the 1947 lease. See Vincent v. Bullock, 187 So. at 40. Despite the assertions of the plaintiffs that the deed conveys a general royalty interest in Dolores’ interest in the property, the deed is devoid of language evidencing a general transfer of all of Dolores’ royalty interest that she held in the property. The phrase “ALL OF SELLER’S right title and interest,” simply 11smodifies the phrase “consisting of an undivided one third in a .00781255 royalty in a royalty interest.” The reference to “all” indicates that Dolores conveyed “all” of her entire interest of the one-eighth (1/8) royalty interest in the 1947 lease affecting the property, instead of retaining a fractional percentage of the royalty interest being conveyed. As noted above, owners are free to dismember their royalty interests in any legal fashion, including by transfer of a fractional interest.
Moreover, there is no language conveying “any and all royalty interest” that Dolores was entitled to in the property. Rather, the deed is discreet in its conveyance of “a .00781255 royalty in a royalty interest.” [Emphasis added.] This cannot be interpreted to be a general transfer of all of Dolores’ royalty interest the property, as argued by the plaintiffs, nor can it be interpreted as a conveyance of all of Do *65 lores’ ownership interest in the property, as argued by Carol.
The plaintiffs suggest that the failure to reference the 1947 lease, or any lease, in the deed renders it a general conveyance of Dolores’ royalty interest in the property. Carol suggests in her answer that the specific reference to the royalty interest in the 1947 lease was a typographical error. We find no merit in either argument. As set forth above, the deeds were clearly contracts of sale for a specific royalty interest in the 1947 lease.
“The royalty depends upon the continued existence of the right to which it is an appendage.” Vincent v. Bullock, 187 So. at 39. Here, Dolores sold her royalty under an existent lease; thus she sold all of her rents due from the 1947 lease upon which the royalty conveyed in the deed is based. See Id. at 39-40. Here, we find that the particular royalty interest conveyed by Dolores was an appendage to the 1947 lease; therefore, when the 1947 lease was terminated, royalty interest associated therewith ceased to burden her interest.
Based on the above, we find that the trial court erred as a matter of law in finding that the 1993 deed conveyed a general royalty interest in the defendants’ | uproperty, amounting to a real right. Thus, we reverse the trial court’s grant of the plaintiffs’ summary judgment and remand this matter for further proceedings in keeping with the views expressed in this opinion.
Our reversal of the trial court’s judgment granting the motion for summary judgment and remanding the matter to the trial court pretermits our consideration of the appellants’ second assignment of error, wherein they contend.that the judgment of trial court goes beyond the relief requested by the plaintiffs in their motion.
CONCLUSION
For the above reasons, we reverse the trial court’s judgment signed March 3, 2016 dismissing the claims of the defendants/appellants, Shelia Richard Breaux, Angela Richard White, Ernie Richard, Jr., Travis Richard, Rene J. Durocher, and Leo Durocher, Anita Maxwell Gonzales, and Laurie M. Bergeron, and remand this matter to the district court for further proceedings. All costs of this appeal are to be divided between the plaintiffs/appellees, Glassell Producing Company, Inc., Clare Attwell Glassell, widow of Alfred C. Glas-sell, Jr., Alfred C. Glassell, III, as trustee under the last will and testament of Alfred C. Glassell, Jr., and Woodrow A. Holland and John M. Robb, as co-trustees of the Alfred C. Glassell, Jr. Children’s Trust for Jean Curry Glassell under the Last Will and Testament of Alfred C. Glassell, Jr.
REVERSED AND REMANDED.

. The petition and motion for summary judgment at issue herein was originally filed by Glassell Producing Company, Inc. and Legacy Trust Company, N.A. However, following the *58 signing of the judgment on March 3, 2016 granting the plaintiffs' motion for summary judgment at issue herein, a judgment of possession was entered in the matter entitled Succession of Alfred C. Glassell, Jr., Probate Docket No. 21084, 17th Judicial District Court, Lafourche Parish, The judgment of possession removed Legacy Trust Company, N.A. as the provisional administrator of the succession and placed the following parties in possession'of the oil, gas, and mineral lease at issue in the current matter; Clare Attwell Glassell, widow of Alfred C. Glassell, Jr„ Alfred C, Glassell, III, as trustee under the last will and testament of Alfred C. Glassell, Jr,, and Woodrow A. Holland and John M. Robb, as co-trustées of the Alfred C. Glassell, Jr. Children’s Trust for Jean Curry Glassell under the Last Will and Testament of Alfred C. Glassell, Jr. As a result of the judgment of possession in tire succession matter, a "Motion to Substitute Party Plaintiffs" was filed in the trial court and this court. In an order dated September 22,.2016, this court remanded this matter to the trial court for the limited purpose of ruling on the motion to substitute and supplement the record. In a judgment signed October 4, 2016, the trial court granted the motion to substitute.

. This legal description of tire property is taken from the plaintiffs’ petition for concursus, We note that different documents in the record contain a different accounting of the amount of acreage contained in the tract;however, the boundary owner descriptions in all of the documents are.the same. It is well, settled in our jurisprudence that the identification of land by acreage or quantity is the lowest ranking of all enumerated standards in describing property. See Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392 (1957), Further, we note that the parties do not contest the property boundary descriptions, or that the property description is otherwise inaccurate.

. See footnote 2.

. Louisiana Code of Civil Procedure article 966 was amended by 2015 La. Acts, No. 422, § 1, effective January 1, 2016. Section 2 of 2015 La. Acts, No. 422, provides that: "[t]he provisions of this Act shall not apply to any motion for summary judgment pending adjudication or appeal on the effective date of this Act.” Here, the pendency of the motion on the effective date of 2015 La. Acts, No. 422 results in the application of the prior version of La. C.C.P. art. 966 to the instant matter.

. Louisiana -Revised Statutes 31:85 provides . as follows:
A mineral royalty is extinguished by:
(1) prescription resulting from nonuse for ten years;
(2). confusion with the title out of which it was created;
(3) renunciation of the royalty right on the part of him to whom it is due, or the express remission of his right;
(4) expiration of the time for which the royalty right was granted or happening of the dissolving condition attached to the mineral royalty; or . .
(5)extinction of the right of him who established the mineral royalty, except that the' extinction of a mineral servitude by inheritance or by any act of the servitude owner does not extinguish a royalty burdening the servitude unless the royalty owner is a party to the act or otherwise consents expressly and in'writing to become bound by it,