**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2023 CA 1151**

**STATE OF LOUISIANA, OFFICE OF THE GOVERNOR, DIVISION OF ADMINISTRATION, OFFICE OF COMMUNITY DEVELOPMENT, DISASTER RECOVERY UNIT, STATE OF LOUISIANA, OFFICE OF THE GOVERNOR, DEPARTMENT OF ECONOMIC DEVELOPMENT**

**VERSUS**

**CITIZENS UNITED FOR ECONOMIC EQUITY**

Judgment Rendered: AUG 0 8 2024

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 663632

Honorable Richard "Chip" Moore, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Kristen D. Amond<br>Alysson L. Mills<br>New Orleans, Louisiana | Counsel for Plaintiff/Appellee<br>State of Louisiana |
| Kriste T. Utley<br>Ross A. Ledet<br>Alexis R. Jani<br>New Orleans, Louisiana | Counsel for Defendant/Appellant<br>Citizens United for Economic Equity |

\* \* \* \* \* \*

**BEFORE:  McCLENDON, HESTER, AND MILLER, JJ.**

*Miller, J concurs w/ reasons
Hester, J. concurs*

**McCLENDON, J.**

In this case, the defendant/plaintiff-in-reconvention appeals the denial of a motion for new trial after the trial court granted summary judgment in favor of the plaintiffs/defendants-in-reconvention and dismissed the defendant's reconventional demand. After review, we reverse.

## FACTS AND PROCEDURAL HISTORY

Following Hurricane Katrina, the United States Department of Housing and Urban Development (HUD) provided Community Development Block Grant (CDBG) funds to aid in Louisiana's economic recovery. The State of Louisiana, Office of the Governor, Division of Administration, Office of Community Development, Disaster Recovery Unit (OCD-DRU), was the direct recipient of the HUD-CDBG funds. OCD-DRU partnered with the State of Louisiana, Office of the Governor, Louisiana Department of Economic Development (LED), to administer the Louisiana Business Recovery Grant and Loan Program (BRGL), which was intended to provide loans and grants to hurricane-affected small businesses in Louisiana. During the two-phase BRGL program, generally, LED administered and facilitated the lending while OCD-DRU maintained a monitoring and compliance role.

Citizens United for Economic Equity (Citizens United), a non-profit corporation with its principal place of business in New Orleans, Louisiana, became a sub-recipient, or intermediary,[1] during Phase II of the BRGL program pursuant to a 2008 Cooperative Endeavor Agreement executed by LED and Citizens United. Subsequently, Citizens United received a grant of funds to lend to small businesses in Louisiana, and Citizens United successfully completed Phase II of the BRGL program.

Giving rise to the dispute between the parties is a two-page Revolving Capital Fund Agreement (RCF Agreement) executed by Citizens United and LED in May 2008, and a one-page amendment to the RCF Agreement executed by Citizens United and LED on in August 2009 (RCF Amendment). As set forth in the RCF Agreement, the Revolving Capital Fund (RCF) was to be funded with "[p]rincipal repaid on loans" from Phase I and Phase

---

[1] The terms "sub-recipient" and "intermediary" are interchangeable, and both indicate an entity responsible for the administration of disaster recovery funds on behalf of the entity that received the allocation from HUD.

2

II of the BRGL program, "for the intended purpose of supporting small business and general economic development in Louisiana." The RCF Agreement set limits for recipient eligibility and the use of the RCF funds, authorized Citizens United to charge "[f]ees and interest . . . to be paid by recipients of funds from the RCF[,]" and provided that LED "reserve[d] the right to request return of all RCF funds if [Citizens United] fail[ed] to comply" with the terms of the RCF Agreement, "or if funds [were not] used for the intended purpose of supporting small business and general economic development in Louisiana." The RCF Amendment added a provision limiting the reasonable costs associated with the administration of the RCF to 15% "of amounts generated by repaid loans, including principal and interest[.]"

Following several years of disputes regarding whether Citizens United was in compliance with the RCF Agreement and the RCF Amendment, OCD-DRU and LED (sometimes collectively, "the State") filed a petition seeking damages for breach of contract against Citizens United on November 20, 2017.[2] The State's petition alleged that Citizens United committed numerous breaches of the RCF Agreement, particularly "by incurring administrative overages in excess of that allowed." Consequently, OCD-DRU suspended Citizens United from lending RCF funds in July 2011. The State alleged that, after Citizens United's suspension, OCD-DRU "continuously made efforts to work with Citizens United to ensure [Citizens United's] compliance with the RCF Agreement[,]" and Citizens United corrected some of the alleged deficiencies. The State's petition further alleged that in September 2014, OCD-DRU permitted Citizens United to resume lending RCF funds "on the condition that [Citizens United] create a comprehensive management plan to address, *inter alia*, how [Citizens United] would adhere to the RCF Agreement's restrictions and repay into the RCF account any administrative overages [Citizens United] had incurred."

---

[2] In response to petitioners' original November 20, 2017 petition, Citizens United filed an exception raising the objection of no cause of action, and the trial court sustained the objection. On May 30, 2018, petitioners filed a first amended petition, and Citizens United filed a second exception raising the objection of no cause of action on August 2, 2018. Subsequently, the parties entered into a stipulation agreeing that petitioners' first amended petition did not allege a cause of action for injunction relief, that petitioners' first amended petition superseded and replaced all allegations and claims asserted in the original petition, and that the claim for injunctive relief sought in the original petition was no longer being pursued. Citizens United then withdrew the second exception raising the objection of no cause of action. The claims described herein are those asserted in the first amended petition.

The State's petition further alleged that Citizens United ultimately failed to comply with the RCF Agreement, OCD-DRU's directives, and Citizens United's own plan. Consequently, by letter dated October 26, 2016 and attached to the State's petition, the State asserted it was terminating the RCF Agreement for cause and demanded the transfer of the RCF funds and related assets to a qualified non-profit organization. In a second letter, dated September 27, 2017 and also attached to the State's petition, the State repeated the demand for the return of the RCF funds and related assets and named NewCorp, Inc., as the qualified nonprofit designated to receive the RCF funds and other related assets. When Citizens United failed to transfer the RCF funds and related assets as demanded, the State filed the instant suit seeking specific performance in the form of a judgment "ordering [Citizens United] to specifically perform its obligation under the RCF Agreement to return all RCF funds by transferring the RCF funds and related assets to the designated Qualified Nonprofit" and awarding the State damages for Citizens United's delay, as well as any and all attorney's fees and costs allowable by contract or law. Alternatively, the State sought monetary damages for Citizens United's breach of its obligations under the RCF Agreement, as well as any and all attorney's fees and costs allowable by contract or law.

In response to the State's petition, Citizens United filed an answer generally denying the State's allegations and asserting a reconventional demand on the basis that the State breached the RCF Agreement. Citizens United's reconventional demand alleged the State "singled out" Citizens United and subjected it to monitoring and requirements that exceeded the scope of the RCF Agreement and that other intermediaries were not subjected to. More specifically, Citizens United asserted that other intermediaries were permitted to use their RCFs for overhead and operating expenses without oversight or admonishment from the State. Citizens United further argued the State imposed the lending freeze without cause or authority to do so, and that Citizens United's compliance with the lending freeze prevented Citizens United from fulfilling its mission and caused Citizens United financial damages. Citizens United further alleged it was "entitled to specific performance under the RCF Agreement to be allowed to retain the RCF and continue to administer the RCF to support small businesses and economic development

4

in Louisiana." Thus, Citizens United prayed for relief in the form of monetary damages, consequential damages, restitution, penalties, attorney's fees, costs and interest, and other general and equitable relief. The State answered Citizens United's reconventional demand and generally denied Citizens United's claims. Litigation ensued.

Pertinent to this appeal, the State filed a motion seeking summary judgment on December 28, 2021.[3] The State alleged that Citizens United withdrew administrative costs associated with the RCF in excess of the permitted "15% of amounts generated by repaid loans"; spent RCF funds on ineligible administrative expenses; failed to follow its own lending policies; issued loans to parties with apparent conflicts of interest; maintained insufficient records; and failed to implement a plan to ensure Citizens United's financial sustainability. The State further asserted that each instance of administrative overspending constituted a breach of the RCF Agreement, and that the language of the RCF Agreement provides for the "return of all RCF funds if [Citizens United] fails to comply" with the RCF Agreement. Accordingly, the State prayed for "summary judgment in its favor, entitling it to specific performance requiring [Citizens United] to return the RCF assets, dismissing [Citizens United's] reconventional demand, and awarding the State all costs, including attorney's fees, to which it is entitled." In support of the summary judgment motion, the State offered a list of undisputed material facts; a memorandum; the affidavit of Vera K. LeSage, Director of Economic Development and Infrastructure for OCD-DRU, together with attachments thereto; the deposition of Adrienne Celestine, former Director of Recovery Programs for OCD-DRU; and the deposition of Tomorr LeBeouf, whom the State identified as a "former analyst, and later a specialist, working with the economic development team of OCD-DRU."

Citizens United filed a memorandum in opposition to the State's motion for summary judgment. In its opposition memorandum, Citizens United objected to the State's Exhibit A, which was the affidavit of Ms. LeSage, and all of the documents attached thereto, identified as Exhibits A-1 through A-28. Citizens United maintained that Ms. LeSage's affidavit was not made on personal knowledge of the attached documents, and

---

[3] An earlier motion for summary judgment filed by the State was denied by the trial court on September 14, 2020.

therefore, did not comply with the LSA-C.C.P. art. 967 requirement that an affidavit offered in connection with a summary judgment motion be based on the affiant's personal knowledge. Citizens United further argued the State failed to meet its burden of proof because multiple genuine issues of material fact exist regarding "all three elements required to prove [the State's] alleged breach of contract claim." Citizens United asserted there was no dispute that the only contractual provisions at issue were contained in the RCF Agreement and the RCF Amendment, and that those terms were "limited and very open-ended." Citizens United further asserted it was given "authority to set its own internal policies without input from the State[,]" that the RCF Agreement "did not even require that the fund be used for loans, only that it was used 'for the intended purpose of supporting small business and general economic development in Louisiana[,]'" and that Citizens United could charge fees and interest at its discretion, without restrictions. Thus, Citizens United contended it had "[u]ndisputedly . . . fully complied with all requirements contained within the original two-page RCF Agreement[.]" Moreover, Citizens United argued the RCF Amendment contained only one provision, which provided that, in addition to the uses permitted for such funds as described in that original Agreement, Citizens United could use up to 15% of amounts generated by repaid loans, including principal and interest, for reasonable costs associated with the administration of the RCF. Citizens United further argued:

> The RCF [A]mendment contained no definitions or guidelines for the terms "reasonable costs," "eligible," "ineligible," or "administration" of the RCF, and did not alter the nature of the RCF itself consisting of repaid principal only (not principal and interest).

In support of its opposition, Citizens United filed a statement of contested facts and the affidavit of Sean M. Bruno, together with attachments thereto. Mr. Bruno attested he had been on the Board of Directors of Citizens United since 2006, served as Chairman of the Board since 2008, and volunteered his time to Citizens United without any compensation. Mr. Bruno further attested he had personal knowledge of the contents of the documents attached to his affidavit, and that the documents were true and accurate copies. Said documents included the RCF Agreement and the RCF Amendment, various

6

items of correspondence between the parties, and the transcript of the deposition of Tomorr LeBouef, with attachments.

The State filed a reply in support of their summary judgment motion. The State argued its summary judgment motion presented a straightforward question regarding a simple breach of contract claim and the following undisputed material facts: Citizens United had a contract to administer RCF funds; Citizens United breached the contract by withdrawing administrative fees in excess of the allowed 15% numerous times over many years; and the contract language therefore "gives the State" "the right to request return of all RCF funds." The State maintained that Citizens United's own records establish that Citizens United breached the contract, and that Citizens United admitted it withdrew administrative fees in excess of 15% until the State filed the instant lawsuit.

The trial court heard the State's motion for summary judgment on May 16, 2022. The trial court executed a written judgment on June 4, 2022, that provided, in pertinent part:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that Defendant's objections to all documents attached to State's Exhibit A (Affidavit of Vera K. LeSage) are hereby **SUSTAINED**. Therefore, Plaintiff's Exhibit A-1 through 28 shall be **EXCLUDED**.
>
> **IT IS ORDERED, ADJUDGED, AND DECREED** that the State's Motion for Summary Judgment is **GRANTED**.

On June 20, 2022, Citizens United filed a motion for new trial and/or clarification. In Citizens United's motion for new trial and/or clarification, Citizens United argued that the State did not prove damages or entitlement to specific performance, and that the trial court failed to rule on Citizens United's reconventional demand. The State opposed Citizens United's motion for new trial and/or clarification, contending in part that Citizens United's reconventional demand "is actually just [Citizens United's] defense to the State's breach of contract claim."

Citizens United's motion for new trial and/or clarification came for contradictory hearing on November 14, 2022. On December 1, 2022, the trial court signed a written judgment which provided, in pertinent part:

> IT IS ORDERED, ADJUDGED, AND DECREED that [Citizens United's] Motion for New Trial is DENIED.

7

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that [Citizens United's] Motion for Clarification is GRANTED. The State's Motion for Summary Judgment sought "summary judgment in its favor, entitling it to specific performance requiring [Citizens United] to return the RCF assets, dismissing [Citizens United's] reconventional demand, and awarding the State all costs, including attorneys' fees, to which it is entitled." The Court's order granting the State's Motion for Summary Judgment granted all of the relief prayed for in the State's motion.

Citizens United suspensively appealed the December 1, 2022 judgment.[4] Preliminarily, we observe that a judgment denying a motion for new trial is an interlocutory order and is normally not appealable. See LSA-C.C.P. art. 2083(C). However, the Louisiana Supreme Court has directed us to consider an appeal of the denial of a motion for new trial as an appeal of the judgment on the merits as well, when it is clear from the appellant's brief that he intended to appeal the merits of the case. **Carpenter v. Hannan**, 2001-0467 (La.App. 1 Cir. 3/28/02), 818 So.2d 226, 228-29, writ denied, 2002-1707 (La. 10/25/02), 827 So.2d 1153. In this matter, Citizens United explicitly assigns as error the trial court's judgment on the merits. Thus, we will treat the appeal as an appeal of the June 4, 2022 summary judgment, as clarified by the December 1, 2022 judgment. See **Miller v. Albertson's Companies, LLC**, 2023-0527 (La.App. 1 Cir. 12/27/23), 381 So.3d 84, 88.

## LAW AND DISCUSSION

The issue presented by this motion for summary judgment is whether the State is entitled to specific performance "requiring [Citizens United] to return the RCF assets[,]" the dismissal of Citizens United's reconventional demand, and costs and attorney's fees. On appeal, Citizens United challenges the trial court's judgment granting summary judgment in favor of the State, while the State argues that summary judgment was proper.

**Summary Judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no

---

[4] Citizens United sought to set the security for the suspensive appeal in the amount of $5,000.00. The State objected to the amount of Citizens United's suggested appeal bond, arguing it was unreasonably low given that the State believed Citizens United possessed RCF assets valued in "[excess of] seven figures." On June 1, 2023, the trial court executed a written judgment granting Citizens United's motion for suspensive appeal and setting security in the amount of $5,000.00.

genuine issue of material fact and the mover is entitled to judgment as a matter of law.[5] LSA-C.C.P. art. 966(A)(3). The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. LSA-C.C.P. art. 966(D)(2); **Kelley v. Estate of Kelley**, 2021-0178 (La.App. 1 Cir. 10/4/21), 330 So.3d 667, 670. This court reviews the grant or denial of a motion for summary judgment *de novo* using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. **Intelligent Mortgage & Consulting Services LLC v. Arbor Lending Group, L.L.C.**, 2022-1252 (La.App. 1 Cir. 8/1/23), 371 So.3d 554, 558-559, writ denied, 2023-01210 (La. 11/15/23), 373 So.3d 80.

The Louisiana Code of Civil Procedure places the initial burden of proof on the party filing the motion for summary judgment. LSA-C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. LSA-C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). The mover may meet his burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, stipulations, and admissions with the motion for summary judgment. LSA-C.C.P. art. 966(A)(4).

---

[5] Louisiana Code of Civil Procedure article 966 was recently amended by 2023 La. Acts. No. 317, § 1, effective August 1, 2023. Significantly, this amendment expanded the exclusive list of supporting documents that are considered competent evidence in support of or in opposition to a motion for summary judgment. See LSA-C.C.P. art. 966(A)(4)(a). Additionally, this amendment changed the duties of parties in supporting and opposing motions for summary judgment. **Ricketson v. McKenzie**, 2023-0314 (La.App. 1 Cir. 10/4/23), 380 So.3d 1, 6. In **Ricketson**, this court found that the 2023 amendments to LSA-C.C.P. art. 966 cannot be applied retroactively, and therefore, applied the version of LSA-C.C.P. art. 966 in effect at the time of the hearing of the motion for summary judgment to the matter then being considered on appeal. Accordingly, in this matter, we will apply the version of LSA-C.C.P. art. 966 in effect at the May 16, 2022 hearing of the State's motion for summary judgment.

**Contractual Interpretation and Breach of Contract**

The substantive law applicable herein is the law governing the interpretation of a contract. Interpretation of a contract is the determination of the common intent of the parties. LSA-C.C. art. 2045. This is an objective inquiry. **John M. Floyd & Associates, Inc. v. Ascension Credit Union**, 2021-0560 (La.App. 1 Cir. 12/22/21), 340 So.3d 259, 266. Courts begin their analysis of the parties' common intent by examining the words of the contract itself. See LSA-C.C. art. 2046; **Floyd**, 340 So.3d at 266. The determination of whether a contract is clear or ambiguous is a question of law. **Glassell Producing Company, Inc. v. Naquin**, 2016-0549 (La.App. 1 Cir. 7/5/17), 224 So.3d 56, 61, writ denied, 2017-1253 (La. 10/27/17), 228 So.3d 1224. When a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. **Glassell**, 224 So.3d at 61-62. However, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often, there are conflicting affidavits concerning the intent of the parties and granting a summary judgment is not appropriate. **Country Club of Louisiana Property Owners Association, Inc. v. Baton Rouge Water Works Co.**, 2019-1373 (La.App. 1 Cir. 8/17/20), 311 So.3d 395, 399. The essential elements of a breach of contract claim are (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform the obligation, and (3) the failure to perform resulted in damages to the obligee. See LSA-C.C. art. 1994; **Gulf South Psychiatry, L.L.C. v. Greenbrier Hospital, L.L.C.**, 2020-0957 (La.App. 1 Cir. 4/16/21), 323 So.3d 880, 883. The burden of proof in an action to recover damages for breach of contract is on the party claiming rights under the contract. **Gulf South Psychiatry**, 323 So.3d at 883.

**Discussion**

Here, the State bore the burden of proof as both the mover on summary judgment and the party seeking damages for breach of contract. See LSA-C.C.P. art. 966(D)(1); **Gulf South Psychiatry**, 323 So.3d at 883. As noted above, in support of the State's summary judgment motion, the State offered the deposition of Ms. Celestine, excerpts of the deposition of Ms. LeBouef, and the affidavit of Ms. LeSage, together with

10

attachments. However, Citizens United objected to Ms. LeSage's affidavit and the attached documents, arguing Ms. LeSage's affidavit did not comply with the LSA-C.C.P. art. 967 requirement that supporting affidavits "shall be made on personal knowledge[.]" The documents, referenced as Exhibits A-1 through A-28, included the Cooperative Endeavor Agreement between LED and Citizens United; the RCF Agreement; the RCF Amendment; and various items documenting the activities of and correspondence between the parties. The trial court sustained Citizens United's objections and excluded Exhibits A-1 through A-28. On appeal, the State maintains in its appellee brief that the trial court erred in excluding Exhibits A-1 through A-28, and this court "can still consider [Exhibits A-1 through A-28.]" We disagree. Jurisprudence has long held that appellate courts cannot amend a judgment in favor of a party who failed to appeal.[6] **Latour v. Steamboats, LLC**, 2023-00027 (La. 10/20/23), 371 So.3d 1026, 1039. As correctly pointed out by Citizens United, the State did not file an appeal or an answer to appeal the trial court's ruling excluding Exhibits A-1 through A-28. Thus, the trial court's ruling excluding the documents cannot be reversed on appeal.

Nevertheless, we may consider the RCF Agreement and the RCF Amendment in conducting our *de novo* review of this summary judgment motion, as Citizens United filed the RCF Agreement and the RCF Amendment as attachments to Mr. Bruno's affidavit, which Citizens United offered in support of its opposition memorandum, and to which the State did not object. Louisiana Civil Code of Procedure article 966(D)(2) provides, in pertinent part, that "[t]he court may consider only those documents filed in support of or in opposition to the motion for summary judgment *and shall consider any documents to which no objection is made.*" (Emphasis added). Thus, LSA-C.C.P. art. 966(D)(2) mandates consideration of the RCF Agreement and the RCF Amendment as documents to which no objection was made. Further, although the State and Citizens United each contend the other party breached the RCF Agreement and the RCF Amendment, the

---

[6] The reasoning is rooted in LSA-C.C.P. art. 2133(A), which provides that an appellee "shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant." However, in such cases, the appellee "must file an answer to the appeal, stating the relief demanded[.]" Consequently, a party may not obtain a modification of the judgment in his favor without appealing or answering the appeal. **Latour**, 371 So.3d at 1039 n.9.

11

parties do not dispute the language contained in the RCF Agreement and the RCF Amendment.

Accordingly, we begin by considering the terms of the RCF Agreement and the RCF Amendment. Interpretation of a contract involves an objective inquiry into the common intent of the parties, and begins with the words of the contract itself. See LSA-C.C. arts. 2045 and 2046; **Floyd**, 340 So.3d at 266. If the words of the contract are clear and explicit and lead to no absurd consequences, our analysis will remain confined to the four corners of the contract; if the contract is ambiguous, we may consider the extrinsic evidence contained in the parties' additional exhibits. See LSA-C.C. arts. 1848 and 2046; **Floyd**, 340 So.3d at 267-268.

The RCF Agreement opens with the following language:

> Principal repaid on loans from the Louisiana Business Recovery Grant and Loan Program (BRGL) Phase I and Phase II to [Citizens United,] used by Citizens United for the intended purpose of supporting small business and general economic development in Louisiana, and in connection therewith may be used by Citizens United to establish a Revolving Capital Fund (RCF) subject to the following conditions . . .

The RCF Agreement then sets forth the conditions for "Recipient Eligibility" and other "Terms[.]" Relevant to the issue before us, the "Terms" include the following:

- Fees and interest may be charged by [Citizens United] to be paid by recipients of funds from the RCF.

- Other terms determined by [Citizens United] as per internal policies and profile/needs of borrower

- Funds may be used for any purpose, except:

  - Payment of any tax arrearages, governmental fines[,] or penalties

  - Political, religious[,] or exclusively gaming activity

  - Buying out of any stockholder or equity holder in a business

  - Buying out or reimbursing any family member

  - Any activity which is illegal

- Portions of funds may be used by intermediaries for loan loss reserves, if needed

- Up to 20% of funds may be used for equity investments (as opposed to loans), with any subsequent profits to be reinvested in the [RCF]

- Repaid principal from the BRGL shall not be subject to [HUD Community Development Block Grant] regulations[.]

12

[LED] reserves the right to request return of all RCF funds if [Citizens United] fails to comply with the above conditions, or if funds are not being used for the intended purpose of supporting small business and general economic development in Louisiana.

The RCF Amendment provides, in pertinent part:

> This First Amendment to [the RCF Agreement] amends the original [RCF Agreement] entered into between [LED] and [Citizens United] . . . regarding principal on repaid loans from the Louisiana Business Recovery Grant and Loan Program (BRGL) Phase I and Phase II to be used by [Citizens United] for the intended purpose of supporting small business and general economic development in Louisiana, and in connection therewith may be used by [Citizens United] to establish a [RCF].

> It is hereby agreed, and the original [RCF] Agreement is hereby amended, as follows: In addition to the uses permitted for such funds as described in that original Agreement, up to 15% of amounts generated by repaid loans, including principal and interest, may be used by [Citizens United] for reasonable costs associated with the administration of the [RCF]. [Citizens United] shall be responsible for maintaining appropriate documentation to prove that such costs are reasonable and specific to the administration of the RCF.

> It is understood and agreed that the language contained in this [RCF Amendment] shall supersede any language to the contrary contained in the original [RCF Agreement] between these parties; and that all other terms, provisions[,] and conditions of the original [RCF] Agreement, unless modified herein, shall remain the same, unchanged and in full force and effect.

A contract is ambiguous on the issue of intent when it lacks a provision bearing on that issue or the intent of the parties cannot be ascertained from the language employed. **Floyd**, 340 So.3d at 270. In reviewing the language of the RCF Agreement and the RCF Amendment, we find the contracts to be ambiguous.

In examining the RCF Agreement and the RCF Amendment, we note that both documents reference various categories of funds, but provide little guidance as to their application.[7] The RCF Amendment provides "up to 15% of amounts generated by repaid loans, including principal and interest, may be used by [Citizens United] for reasonable costs associated with the administration of the [RCF,]" but there is no mention in the RCF Amendment as to how fees should be handled or whether they would be considered in calculating the 15% cap on administrative costs. Additionally, it could be argued that the intent was to include said fees within "amounts generated by repaid loans[,]" as opposed

---

[7] We further note that the language in the RCF Amendment providing that the RCF Amendment "shall supersede any language to the contrary contained in the original [RCF Agreement]" does not resolve the ambiguity. This ambiguity does not arise from terms in the RCF Amendment that conflict with the RCF Agreement, but rather, arises from the dearth of language in both documents.

13

to including them as part of the administrative costs calculation. The documents in question do not clearly set forth how the fees allowed by the original contract are to be treated, nor how the permissible 15% administrative costs are to be calculated. In sum, the contractual language allows for numerous possible interpretations, including: Citizens United may charge loan recipients fees, which are subject to the 15% cap; Citizens United may charge loan recipients fees, in addition to the 15% cap; or the fees charged by Citizens United may be included in calculating the "amounts generated by repaid loans[.]" Additionally, the parties disagree as to what would be properly classified as reasonable and eligible administrative costs. Accordingly, we must conclude that the agreements between the parties contain ambiguities, requiring us to look to the parties' intent.

In motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, and when there are conflicting affidavits concerning the intent of the parties, granting a summary judgment is not appropriate. See **Country Club of Louisiana**, 311 So.3d at 399. In reviewing the evidence submitted by the State, we initially note that, because all of the State's exhibits attached to Ms. LeSage's affidavit were excluded, the documents containing the specific calculations that the State relied upon in arguing that Citizens United exceeded the 15% cap on administrative costs cannot be considered by this court.[8] Further, there is conflicting testimonial evidence concerning the parties' intent regarding the manner in which the fees were to be treated, how the 15% administrative costs were to be calculated, and what costs would be reasonably associated with the administration of the funds.

In this matter, Ms. Celestine's deposition testimony, which was attached to the State's summary judgment motion, reflects that, in practice, the State provided Citizens United with a form "that spelled out how they needed to calculate the funds going into the revolving capital fund and how it was used and that was part of the monthly reporting[,]" and she was "pretty sure" this form included principal, interest, and fees. Ms. Celestine's deposition testimony further reflects that while the State and Citizens

---

[8] While the State argues that Citizens United's own calculations show that Citizens United's administrative costs exceeded the permissible 15%, the State's documents supporting this argument were contained in the documents the trial court excluded from consideration, and therefore, we cannot consider same.

14

United ultimately agreed on a formula for the monthly calculations, disagreements continued. In addition, the depositions and affidavits establish that the parties have long disputed which expenses are properly considered "reasonable costs associated with the administration of the [RCF,]" which is not specifically defined in the RCF Agreement or the RCF Amendment. Though Ms. Celestine and Ms. LeBouef both testified that Citizens United's use of RCF funds was not always in compliance with the RCF Agreement and the RCF Amendment, Mr. Bruno attested that Citizens United "properly used the RCF funds to pay for legitimate and reasonable expenses." More specifically, Mr. Bruno attested that two years after the RCF Amendment was executed, the State advised Citizens United that "certain operating expenses were purportedly not allowed to be reimbursed from the RCF" and alleged an "overage in permissible expenses[,]" which Citizens United disagreed with and disputed. Finally, Mr. Bruno's affidavit contained an attestation that the documents attached thereto were true and correct copies, and said documents confirmed Citizens United's ongoing expressed disagreement with the State's assessment of whether Citizens United was in breach of the 15% administrative cost provision. Because we have found the language of the contract to be ambiguous as a matter of law, and because there is contradictory testimony regarding the intent and understanding of the parties, we are constrained to find that summary judgment is not appropriate.

## CONCLUSION

For the foregoing reasons, the June 4, 2022 and the December 1, 2022 judgments, granting summary judgment in favor of the State of Louisiana, Office of the Governor, Division of Administration, Office of Community Development, Disaster Recovery Unit, and the State of Louisiana, Office of the Governor, Louisiana Department of Economic Development, finding the State entitled to specific performance, dismissing the reconventional demand asserted by Citizens United for Economic Equity, and awarding the State all costs, are reversed. Costs of the appeal are assessed to the State of Louisiana, Office of the Governor, Division of Administration, Office of Community Development, Disaster Recovery Unit, and the State of Louisiana, Office of the Governor, Louisiana Department of Economic Development, in the amount of $6,772.00.

**SUMMARY JUDGMENT REVERSED.**

15

STATE OF LOUISIANA,
OFFICE OF THE GOVERNOR,
DIVISION OF ADMINISTRATION,
OFFICE OF COMMUNITY
DEVELOPMENT, DISASTER
RECOVERY UNIT, STATE OF
LOUISIANA, OFFICE OF THE
GOVERNOR, DEPARTMENT OF
ECONOMIC DEVELOPMENT

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2023 CA 1151

VERSUS

CITIZENS UNITED FOR
ECONOMIC EQUITY



**MILLER, J., concurring.**

I disagree with the majority's consideration of the RCF Agreement and the RCF Amendment. Louisiana Code of Civil Procedure article 966(D)(1) places the initial burden of proof on the party filing a motion for summary judgment. When the party filing the motion for summary judgment will bear the burden of proof at trial, he must support his motion for summary judgment with credible evidence that would entitle him to a directed verdict if not controverted at trial. Aucoin v. Larpenter, 2020-0792 (La. App. 1st Cir. 4/16/21), 324 So. 3d 626, 632, writ denied, 2021-00688 (La. 9/27/21), 324 So. 3d 87. The mover can meet this burden by filing supporting documentary evidence consisting of pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions with its motion for summary judgment. La. C.C.P. art. 966(A)(4). Other documents that are not included in the exclusive list set forth in La. C.C.P. art. 966(A)(4) are not permitted unless they are properly authenticated by an affidavit or deposition to which they are attached. Successions of Millet, 2021-0355 (La. App. 1st Cir. 12/22/21), 340 So. 3d 252, 257; see also La. C.C.P. art. 966, comments— 2015, comment (c). The mover's supporting documents must prove the essential

facts necessary to carry the mover's burden. <u>Successions of Millet</u>, 340 So. 3d at 257.

This Court has held that in deciding a motion for summary judgment, it must first be determined whether the supporting documents presented by the **mover** are sufficient to resolve all material fact issues. <u>Jeandron v. Cenac</u>, 2022-1158 (La. App. 1st Cir. 4/14/23), 365 So. 3d 851, 856 (Emphasis added); <u>Mercadel v. State Through Department of Public Safety and Corrections</u>, 2018-0415 (La. App. 1st Cir. 5/15/19), 2019 WL 2234404, *3 (unpublished). Once the mover properly establishes the material facts by its supporting documents, the burden then shifts to the non-moving party to produce factual support, through the use of proper documentary evidence attached to its opposition, which establishes the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.[1] La. C.C.P. art. 966(D)(1); <u>Jeandron</u>, 365 So. 3d at 857; <u>Mercadel</u>, 2019 WL 2234404 at *3.

In support of its motion for summary judgment, the State attached the affidavit of Vera K. LeSage, together with attachments including the RCF Agreement and the RCF Amendment. The State also attached two depositions in support of its motion. CUEE filed a memorandum in opposition, wherein it objected to the State's affidavit of LeSage and the documents attached. After a hearing, the trial court sustained CUEE's objections to all documents attached to State's Exhibit A (Affidavit of Vera K. LeSage), and the trial court excluded Exhibit A-1 through 28, which included the

---

[1] In <u>Jeandron</u>, 365 So. 3d at 859 n.7, this Court stated:

> We recognize that Ms. Jeandron offered the deposition testimony of Dr. Cenac in opposition to the motion for summary judgment. However, in determining whether the mover has met his initial burden on the motion for summary judgment of establishing the material facts, the mover cannot rely on documents offered by the non-mover in opposition to the motion for summary judgment... Therefore, in reviewing Dr. Cenac's motion for summary judgment, we cannot consider the deposition of Dr. Cenac offered by Ms. Jeandron in opposition to the motion in determining whether Dr. Cenac met his initial burden on the motion of establishing the material facts.

RCF Agreement and the RCF Amendment. The State did not appeal the trial court's exclusion of the affidavit and attachments, and it did not answer the appeal.

The majority states that the RCF Agreement and the RCF Amendment may be considered in conducting a *de novo* review since CUEE filed the RCF Agreement and the RCF Amendment as attachments to its opposition. However, it is my position that, in determining whether the State has met its initial burden, the State cannot rely on documents offered by CUEE in opposition. Thus, the RCF Agreement and the RCF Amendment filed in support of CUEE's opposition should not be considered, as such, the State failed to meet its initial burden on the motion for summary judgment, and summary judgment should have been denied.